# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 96-30964

KEITH HUDSON,

Plaintiff-Appellant,

UNIDENTIFIED PARTIES,

Defendants-Appellees,

versus

CITY OF NEW ORLEANS; DISTRICT ATTORNEY'S
OFFICE; SUSAN RICHARDSON; MAURICE LANDRIEU,

Defendants-Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana

May 13, 1999

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The question before us is whether the Orleans Parish District Attorney's Office is an arm of the state of Louisiana and therefore immune from suit in federal court under the Eleventh Amendment. We find that it is not, and REVERSE the decision of the district court.

### FACTUAL & PROCEDURAL BACKGROUND

In 1994, Plaintiff-appellant Keith Hudson was convicted in Louisiana state court for battery and illegal possession of a firearm. After conviction and while an inmate, Hudson filed a federal lawsuit under 42 U.S.C. § 1983 alleging several civil rights violations based on the circumstances surrounding his February 22, 1994 arrest and subsequent detention. One of the defendants named was the Orleans Parish District Attorney's Office.

In July 1995, the magistrate judge recommended that Hudson's claim against the Orleans Parish District Attorney's Office be dismissed on grounds of Eleventh Amendment immunity. The magistrate judge reasoned that the Orleans Parish District Attorney's office was an office within the state government, and so was entitled to this immunity. The district court agreed, and entered a judgment in favor of the defendants in August 1995.

Hudson appealed this decision, along with several other decisions the district court had made with respect to other defendants in the lawsuit, to this Court. We severed the issue of Eleventh Amendment immunity from the other questions presented for review, and then remanded this issue for further development of both the evidentiary record and the law bearing on the entitlement to immunity. In particular, we noted that the question presented would be governed by the six-factor test we established in Clark v. Tarrant County, 798 F.2d 736, 744-45 (5th Cir. 1986), and that in its

2

Clark analysis the district court should defer to Louisiana's interpretation of its statutes and case law. Those factors are:

1. Whether the state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned primarily with local as opposed to statewide, problems;
5. Whether the entity has the authority to sue and be sued in its own name; and
6. Whether the entity has the right to hold and use property.

Id.

After holding an evidentiary hearing, the magistrate judge issued a recommendation urging the district court again to dismiss Hudson's case on Eleventh Amendment grounds. As we had required, the magistrate analyzed Defendant-appellee Orleans Parish District Attorney's office's entitlement to immunity under the Clark factors. He concluded that: (1) in accordance with the Louisiana Supreme Court's opinion in Diaz v. Allstate Ins. Co., 433 So.2d 699 (La. 1983), the Orleans Parish District Attorney's office is under state control; (2) it is unclear who would be liable to pay a judgment against the office; (3) the office does not enjoy local autonomy; (4) the Orleans Parish District Attorney's office is primarily concerned with state rather than local concerns; (5) a suit against the office necessarily raises claims against the District Attorney in his official capacity; (6) and that the office holds and uses property titled both in the name of the City of New Orleans and in the name of the State of Louisiana.

The district court subsequently adopted the magistrate's opinion with additional comments, and dismissed Hudson's claim. Most importantly, the district court rejected part of the magistrate's analysis under the first prong of the Clark test, and noted that the Louisiana's Supreme Court's

3

opinion in Diaz had been legislatively overruled. The district court nevertheless ruled that Diaz did not alter the outcome of the case, and again ordered Hudson's claim against the Orleans Parish District Attorney's office be dismissed.

## DISCUSSION

## I

Before directly addressing the Eleventh Amendment issue, we pause for a moment to consider how this suit was pled in federal district court. Among other defendants, Hudson brought this § 1983 suit against the Orleans Parish District Attorney's office. However, Louisiana law does not permit a district attorney's office to be sued in its own name. See LA. CONST. art. V, § 24. Rather, it requires that the claim be brought against the district attorney in his official capacity. See Riley v. Evangeline Parish Sheriff's Office, 637 So.2d 395 (La. 1994) (treating a claim against a Sheriff's Office as actually one against the Sheriff in his official capacity). Because we generally follow state law on this issue, see FED. R. CIV. P. 17(b); Gegenheimer v. Galan, 920 F.2d 307, 310 (5th Cir. 1991), the district court treated the claim as one against District Attorney Harry F. Connick, in his official capacity as District Attorney for the Parish of New Orleans. Both parties argue that this treatment was correct.

We agree, although we point out that for purposes of the Eleventh Amendment we do not generally distinguish between suits brought against an entity and suits brought against the entity's officers in their official capacity. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The sole exception to this rule is when the plaintiff seeks prospective relief. See Darlak v. Bobear, 814 F.2d 1055, 1060-61 (5th Cir. 1987) (observing that the Ex Parte Young, 209 U.S. 123

4

(1908) exception to the Eleventh Amendment applies when a suit is brought against a state official, as opposed to a state entity, challenging the constitutionality of his action, and the relief involved is prospective); Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986). The plaintiff in this case does not meet this exception as he is seeking retroactive monetary relief. See Darlack, 814 F.2d at 1062 n.7.

Thus, while the nominal defendant is the Orleans Parish District Attorney's office, for all purposes except our Eleventh Amendment analysis the court will consider the defendant as being District Attorney Harry Connick in his official capacity.

**II**

Hudson argued to the district court, and again urges on appeal, that we have already decided in Mairena v. Foti, 816 F.2d 1061, 1064 n.1 (5th Cir. 1987) that the Orleans Parish District Attorney's office is not protected by the Eleventh Amendment. Mairena involved a § 1983 lawsuit brought against the Orleans Parish District Attorney in his official capacity. In a footnote we explained that we did not see any basis to distinguish Crane v. Texas, 766 F.2d 193 (5th Cir. 1985) (holding that Texas district attorneys were not protected by the Eleventh Amendment). See Mairena, 816 F.2d at 1064 n.1. Consequently, we held that district attorneys in Louisiana are not arms of the state and not entitled to sovereign immunity under the Eleventh Amendment.

Hudson claims that our Mairena decision is binding precedent, and can only be overruled by an *en banc* court. Because we hold that the Mairena decision was correct, we need not address Hudson's contention. Several district courts, including the one below, have argued that Mairena's precedential value is questionable, however, because there we had not applied the six-factor Clark

5

test.  Additionally, we have held that "analogies between like entities cannot replace consideration of the six relevant factors." Flores v. Cameron County, Texas, 92 F.3d 258, 268 (5th Cir. 1996); see also McDonald v. Board of Mississippi Levee Commissioners, 832 F.2d 901, 908 (5th Cir. 1987). We therefore take this opportunity to clarify why the Eleventh Amendment does not immunize the Orleans Parish District Attorney's office.

**III**

Generally speaking, the Eleventh Amendment to the United States Constitution prevents states from being sued in federal court. Underneath this perhaps simple statement, however, lies great ambiguity.  See John C. Jeffries, Jr., In Praise of the Eleventh Amendment and Section 1983, 84 VA. L. REV. 47, 47 (1998) ("As everyone knows, the Eleventh Amendment is a mess") (omitting footnote).  At the heart of this case is the issue of what is included in the term "state." The view that the amendment only prevents the state from being a named defendant to a federal action was rejected long ago.  Instead, a "suit may nonetheless be barred by the Eleventh Amendment if the state is the real, substantial party in interest because the suit seeks to impose a liability which must be paid from public funds in the state treasury." See, e.g., Pendergrass v. The Greater New Orleans Expressway Commission, 144 F.3d 342, 344 (5th Cir. 1998) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).

Of course, identifying when the state is a real, substantial party in interest is often not an easy task.  Courts are frequently put in the position of deciding whether the defendant being sued is better described as an arm of the state partaking in the privileges of  Eleventh Amendment immunity or whether the defendant is actually part of a political subdivision unprotected by the Eleventh Amendment.  To help identify when a suit against a governmental entity, or an official of the entity

6

sued in his official capacity, is considered to be a suit against the state, we have in the past utilized

six factors:

1.  Whether the state statutes and case law view the agency as an arm of the state;
2.  The source of the entity's funding;
3.  The entity's degree of local autonomy;
4.  Whether the entity is concerned primarily with local as opposed to statewide, problems;
5.  Whether the entity has the authority to sue and be sued in its own name; and
6.  Whether the entity has the right to hold and use property.

Clark, 798 F.2d at 744.[1]   A defendant need not possess each of the above attributes to benefit from

the Eleventh Amendment.  Nor are these factors necessarily equal to one another. Indeed, it is well

established that the second is the most important.  See Delahoussaye v. City of New Iberia, 937 F.2d

144 147-48 (5th Cir. 1991) ("Because an important goal of the Eleventh Amendment is the protection

of state treasuries, [this is] the most significant factor in assessing an entity's status."); see also Hess

v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 48-49 (1994) (citing Jacintoport Corp. v.

Greater Baton Rouge Port Comm'n, 762 F.2d 435, 440 (5th Cir. 1985)); Pendergrass, 144 F.3d at

---

[1]The Orleans Parish District Attorney's office cites McMillian v.  Monroe County, 520 U.S. 781, 117 S.Ct. 1734 (1997), in support of a different approach to the arm of the state analysis.  In McMillian, the Court held that the Monroe County Sheriff was a state policymaker, as opposed to a county policymaker, for purposes of county liability under 42 U.S.C. § 1983.  In drawing this conclusion, the Court observed that it did not look to whether the sheriff acted for the state in an "all or nothing manner" but rather whether he did so while acting in a law enforcement capacity.  See id. at __, 117 S.Ct. at 1737. From McMillian, the Orleans Parish District Attorney's office fashions a test in which we would look at the function of the officer being sued.  Applying this test here, the Orleans Parish District Attorney's office would have us conclude it is a state office because Hudson's lawsuit focuses around an action the office took in a criminal prosecution on behalf of the State of Louisiana.

McMillian did not concern the Eleventh Amendment.  Instead, it dealt with the issue of county liability in § 1983 lawsuits. While we look at the function of the officer being sued in the latter context, we do not in our Eleventh Amendment analysis. See Esteves v. Brock, 106 F.3d 674, 677-78 (5th Cir. 1997) (dealing with county liability in the § 1983 context) (distinguishing the result reached in the Eleventh Amendment case of Crane v. Texas, 766 F.2d 193 (5th Cir. 1985)).

345. In contrast, we typically deal with the last two factors in a fairly brief fashion. See , e.g., Pendergrass, 144 F.3d at 347; Delahoussaye, 937 F.2d at 147. Rather than forming a precise test, these factors help us balance the equities and determine as a general matter "whether the suit is in reality a suit against the state itself." Laje v. R.E. Thomason General Hosp., 665 F.2d 724, 727 (5th Cir. 1982).

In the instant case, we must resolve whether the Orleans Parish District Attorney's office is an arm of the state of Louisiana for purposes of the Eleventh Amendment. Before turning to the specific facts involved here and reviewing them through the filter of the Clark test, however, it is useful to note that we addressed this same question, and in fact ultimately reached opposite conclusions, with respect to district attorneys in both Texas and Mississippi.

In Crane v. Texas, 766 F.2d 193 (5th Cir. 1985), we held that Texas district attorneys were not protected by the Eleventh Amendment. We conceded that Texas district attorneys were created by the state constitution and therefore were in some senses officers of the state. See id. at 194. In the end, however, we concluded that the balance had to be struck against Eleventh Amendment immunity. We pointed out that the office was funded by the county, not the state, and that a judgment against the district attorney in his official capacity would expend itself on the county's treasury. See id. We also observed that the powers of a district attorney were limited to a county, that the state could not oversee prosecutorial decisions, and that district attorneys were elected by voters of the county. See id.

In contrast, in Chrissy F. by Medley v. Mississippi Dept. of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991), we held that protections of the Eleventh Amendment encompassed Mississippi district

attorneys. While this result differed from that reached in Crane, the reasoning in both cases focused around the same issues. Most importantly, we found that Mississippi district attorney offices were primarily state-funded. See id. We also noted that the Mississippi district attorney could represent the state in judicial proceedings outside the district in which he or she served. See id.

Having examined the most relevant precedent, we can now turn directly to the facts specific to the Orleans Parish District Attorney's office. We review *de novo* the district court's decision to dismiss on Eleventh Amendment grounds. See Kenedy Memorial Foundation v. Mauro, 21 F.3d 667, 670 (5th Cir. 1994) (reviewing the dismissal for lack of subject-matter jurisdiction *de novo);* Warnock v. Pecos County, 88 F.3d 341, 343 (5th Cir. 1996) (noting the Eleventh Amendment deprives a federal court of subject-matter jurisdiction). After a very careful review, we conclude that the Orleans Parish District Attorney's office is not an arm of the state and therefore not entitled to the benefits of the Eleventh Amendment. The question is a close one; as we will elaborate upon below, the state's constitutional framework classifies district attorneys as state officials, and there exists a potential constitutional mechanism for the Louisiana Attorney General to oversee at least some of the district attorneys' prosecutorial decisions. Nevertheless, we perceive the balance as tilting against sovereign immunity. The two most important considerations pointing towards sovereign immunity are both significantly undermined by Louisiana's political realities. Despite the state constitution, the Louisiana legislature has treated district attorneys more like representatives of the state's political subdivisions than of the state itself. And although the Attorney General theoretically could oversee local prosecutions, that power is greatly hampered by the requirements that such intervention occur only with cause and with judicial authorization. Ultimately we are most persuaded by the fact that the

9

state treasury will in all likelihood be left untouched if damages were to be levied against the Orleans Parish District Attorney's office. It is well established that this second factor is crucial to our Eleventh Amendment arm of the state analysis. See Delahoussaye v. City of New Iberia, 937 F.2d 144, 147-48 (5th Cir. 1991). In sum, we conclude that the Orleans Parish District Attorney's office is not protected from suit in federal court by the Eleventh Amendment.

## A

The first factor we take into account is how the state, through its constitution, laws, judicial opinions, attorney general's opinions, and other official statements, perceives the entity in question. See Pendergrass v. The Greater New Orleans Expressway Commission, 144 F.3d 342, 344-45 (5th Cir. 1998). If t he state characterizes the office in question as an arm of the state, this factor is counted in favor of Eleventh Amendment immunity. See id. The district court described this factor as "a mixed bag." We agree, and consider this factor as neither cutting towards or against Eleventh Amendment immunity.

## 1

On the one hand, the Louisiana constitution considers the Orleans Parish District Attorney's office an arm of the state. The Louisiana constitution divides its attention between the state government, which is further subdivided into the legislative, executive, and judicial branches, and the local government. Compare LA. CONST. art. II, § 1 (dividing the state government into three branches) with id. at art. VI (dealing with local government). Importantly, the provisions establishing

the offices of district attorney are contained within the articles that deal with state government --

specifically in article V, which deals with the Judicial Branch.  See id. at art. V, § 26. The relevant

provision creates the office of district attorney for each judicial district, specifies that they are elected

officials, limits their term of office to six years, establishes qualifications for the office, and permits

them the power to appoint assistant district attorneys.  See id. at. art. V, § 26(a).  It also specifies that

the district attorney, or a designated assistant, "shall have charge of every criminal prosecution by the

state before the grand jury in his district, be the representative of the state before the grand jury in

his district, and be the legal advisor to the grand jury." See id. at art V, § 26(b).  Given its method

of organization, we suspect that the framers of the state constitution assumed that district attorneys

were officers of the state.[2]

This suspicion is confirmed by the Louisiana Supreme Court, which has mentioned on several

occasions that the district attorney is a state officer who exercises constitutional duties. First, the

Louisiana Supreme Court appears to view district attorneys as state officials as opposed to parish

officials. See Diaz v. Allstate Ins. Co., 433 So.2d 699, 701 (La. 1983). Interpreting article V, § 26

of the state constitution, the Diaz court held:

> A district attorney is a constitutional officer who serves in the judicial branch and
> exercises a portion of the sovereign power of the state within the district of his office.
> His office, duties and powers are governed by the constitution and the legislature, and
> are not subject to local control.  His office, therefore, is an office of state, not local
> government.

---

[2]Hudson contends that our analysis overlooks the fact that the Louisiana constitution in two places refers to district attorney as "parish" officials.  See LA. CONST. art. VI, §§ 5(g) & 7(b).  This exact argument has already been rejected by the Louisiana Supreme Court.  See Diaz, 433 So.2d at 701 n.3.

11

<u>Id.</u> at 701 (citations omitted).[3] While only two justices agreed with this part of the opinion at the time <u>Diaz</u> was handed down, subsequent decisions by that court rei terate this conclusion without reservation. <u>See  Knapper v. Connick</u>, 681 So.2d 944, 945 (La. 1996) (citing this portion of <u>Diaz</u>); <u>Board of Commissioners of the Orleans Levee District v. Connick</u>, 654 So.2d 1073, 1077 (La. 1995) (same). Additionally, in <u>State v. Saizan</u>, 692 So.2d 1045, 1050 (La. 1997), the Louisiana Supreme Court distinguished between municipal prosecutors and district attorneys, noting that the former enforce local ordinances and represent specific localities, while the latter enforce state law and represent the state. <u>See id.</u>  The state's view, at least when the state constitution is involved, appears to be that the Orleans Parish District Attorney's office is an extension of the state.[4]

The parties strongly disagree as to how significant a role this conclusion should play in our analysis under this factor: Hudson suggests it should barely matter, if at all, while the Orleans Parish District Attorney's office considers it decisive. We reject both extremes, and simply consider it one glimpse into how the state of Louisiana characterizes its district attorneys.

Hudson contends that our precedent requires us to put little stock in the fact that the state constitution creates the district attorney.   We disagree.  Although we held in <u>Crane v. Texas</u>, 788 F.2d 193 (5ᵗʰ Cir. 1985) (per curiam) that a Texas district attorney sued in his official capacity could not share in the state's Eleventh Amendment immunity despite the fact that the Texas constitution

---

[3]This portion of <u>Diaz</u> is still good law. The part of the <u>Diaz</u> opinion interpreting LA. REV. STAT. ANN. §13:5108.2, however, has been legislatively overruled. <u>See</u> La. Atty. Gen. Op. No. 89-210A (Sept. 8, 1989).

[4]In drawing this conclusion, we do not rely on abstract references to Louisiana district attorneys as state officers. <u>See, e.g., Knapper</u>, 681 So.2d at 947. We have declined to consider similar references in the past. <u>See Crane</u>, 766 F.2d at 194 n.1.

created the district attorney's office, our analysis did not ignore the state constitution. See id. at 194. Rather, we closely read the document and concluded that the significance derived from its creation of the office was diminished because "other local officers are created by it as well." Id. This distinction does not apply to the case at bar. Unlike the Texas constitution, which intermingles its discussions of state and local governmental entities, the Louisiana Constitution carefully divides its attention between the two and primarily discusses the district attorneys' office in the portions reserved for state government. Therefore, we can give the fact that the state constitution views the district attorney's office as a state office the full weight it deserves.

That is not to say that our analysis considers this fact decisive with respect to the first factor. The Orleans Parish District Attorney's office suggests that this fact should end our inquiry because our analysis of this factor is governed by a test fashioned by the Louisiana Supreme Court to resolve whether an entity is a state office or a local office. See Mullins v. State, 387 So.2d 1151, 1152 (La. 1980). Under t hat test, "'[i]f the office is created by the legislature, or is established in the first instance by the constitution, it is a state office.'" See id. at 1152 (quoting State v. Taylor, 11 So.132 (La. 1892)).

We cannot adopt this approach, however. While we refer to the provisions of state law to assess an entity's entitlement to Eleventh Amendment immunity, see Regent s of the University of California v. Doe, 519 U.S. 425, __ n.5, 117 S.Ct. 900, 904 n.5 (1997), federal law ultimately controls the scope of our Eleventh Amendment analysis. See id.; see also Earles v. State Board of Certified Public Accountants, 139 F.3d 1033, 1036 (5th Cir. 1998). That is, federal law has designed our Eleventh Amendment analysis, and it alone sets the bounds of what we look to in conducting our

13

inquiry.  Although federal precedent requires that we look to the state's view of the entity in question to help us reach our conclusion, and that we do so by looking at state law, this state law is relevant only to the extent that it gives us insight into how the state perceives the entity.  It certainly does not limit the scope of our inquiry, as the Orleans Parish District Attorney's office suggests.

Applying this understanding, we do not look to, for instance, the Louisiana constitution because the Louisiana Supreme Court instructed us to do so, but rather because our precedent requires that we do so. See Crane, 766 F.2d at 194 (examining the Texas constitution). It is entirely a matter of coincidence that the Mullins test would have us look at the same document.  More visibly, the fact that we find that the Louisiana constitution creates the office of district attorney in its articles dealing with state government does not end our inquiry, as it might under Mullins. Rather, we continue with our analysis of the first factor, examining o ther provisions of state law to find the Orleans Parish District Attorney's office's "place in the overall scheme of Louisiana government." Earles, 139 F.3d at 1037.


**2**

Although the state constitution characterizes the Orleans Parish District Attorney's office as an arm of the state, the state legislature seems to take the opposite view.  First, the legislature has not hesitated in assigning local functions to district attorneys. See LA. CONST. art V, § 26(b) (noting that district attorneys "shall perform other duties provided by law").  For example, district attorneys, in the name of a parish, have the right to file suits to abate public nuisances. See LA. REV. STAT. ANN. § 13:4722. Also, in all suits against political subdivisions of the state, service is proper on the district

14

attorney for the district in which the political subdivision is found if no agent has been designated for service of process. See LA. REV. STAT. ANN. § 13:5107(b). Similarly, Louisiana district attorneys can advise the governing authority of the parish on compromising or settling any claim against the parish. See LA. REV. STAT. ANN. § 13:5109. Moreover, district attorneys can act as counsel for parish boards and commissions, and even city school boards, within their districts. See LA. REV. STAT. ANN. § 16:2(A). In these ways, the Louisiana legislature has treated district attorneys more like local officials than officers of the state.

Additionally, the state legislature has put considerable distance between itself and district attorneys. This is illustrated by LA. REV. STAT. ANN. § 42:1441(a), which declares that the state cannot be named as a party when the basis of the lawsuit are the acts or omissions by a district attorney or an employee of a district attorney.[5] See Gibson v. State of Louisiana, 644 So.2d 1148 (La. App. 4th Cir. 1994) (relying on § 42:1441(a) when holding that "[t]he District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees.");

---

[5]Section 42:1441 only forbids the state from being named as an actual party to a lawsuit. Reading this provision in isolation, the state could still be required to indemnify the district attorney in the event of an unfavorable judgment. This conclusion is illustrated by § 42:1441(b), which provides that "the provisions of said Subsection A [should not] be construed to amend or repeal R.S. 13:5108.1." As we conclude later in this opinion, however, the legislature eliminated its obligation to indemnify the district attorney under § 13.5108.1.

The Orleans Parish District Attorney's office argues we should ignore § 42:1441 because it is constitutionally infirm. Only a single state district court has found this to be true, however, and that decision was set aside by the Louisiana Supreme Court. See Diaz, 433 So.2d at 701 (setting aside lower court determination that § 42:1441 violated LA. CONST. art. XII, § 10(a)). Moreover, the Orleans Parish District Attorney's office concedes that § 42:1441 may be constitutional following the 1995 amendment to LA. CONST. art. XXII, § 10. Our own review of the constitutional provisions in question, unaided by actual arguments by the parties, suggests that the Orleans Parish District Attorney's office's concession is probably a wise one. In any event, we utilize § 42:1441 not for its legal force but to highlight the state legislature's view of the district attorney's office.

Obermier v. State of Louisiana, 606 So.2d 937, 939 (La. App. 3rd Cir. 1992) (relying on § 42:1441(a) when holding that "[i]f a party is seeking recovery for damages against a district attorney of the state of Louisiana, the path of recourse does not lead to the state. The statute mandates that the state shall not be liable for any damages caused by the district attorney."). Further, the legislature recently forbade courts from holding the state vicariously liable for the "offenses and quasi offenses" of the district attorney. See LA. REV. STAT. ANN. §§ 42:1441.1 & 42:1441.2.

Finally, recent opinions of the Attorney General suggest that the Orleans Parish District Attorney's office is more properly considered a local rather than a state entity. In La. Atty. Gen. Op. No. 89-210A (Sept. 8, 1989), the Attorney General noted that the legal position of district attorneys and similar officials has become "perhaps the most unsettled area of local government law." His evaluation rested on dramatic changes in the state legislature's view of these officials, specifically referring to the 1985 passage of LA. REV. STAT. ANN. §§ 42:1441.1-.4, which legislatively overruled several Louisiana Supreme Court decisions including Mullins, and the 1984 amendments to LA. REV. STAT. ANN. § 13:5108.2, which overruled the Louisiana Supreme Court's decision in Diaz. Most importantly, he observed that these changes indicated a legislative intent to shift responsibility over the district attorneys from the state to the local level. Thus, while the Attorney General had opined in 1987 that for most circumstances the district attorney is not a political subdivision, see La. Atty. Gen. Op. No. 87-328 (July 1, 1987), by 1990 he had concluded that district attorneys and their employees are considered employees of their respective parishes despite the fact that they exercise constitutional and statutory authority. See La. Atty. Gen. Op. No. 90-194 (May 25, 1990).

16

In sum, the state's view of the district attorneys is complex and perhaps even still changing. On the one hand, the state appears to place them as officers of the state in its constitutional scheme. On the other, the state indicates through its legislation and opinions of the attorney general that they are part of local government. We agree with the district court's assessment that this factor points in different directions, and as such, we decline to count it either in support for, or denial of, Eleventh Amendment immunity. See Earles v. State Board of Certified Public Accountants, 139 F.3d 1033, 1038-39 (5th Cir. 1998) (considering a conflicting factor not to impact the Eleventh Amendment conclusion).

**B**

The second factor we look to is the source of funding for the Orleans Parish District Attorney's Office. See Clark, 798 F.2d at 744. We conduct this examination to determine whether a judgment against it will be paid with state funds. See, e.g.,Pendergrass, 144 F.3d at 345-46 (examining the source of funding to determine if the judgment would be paid out of the state treasury); Earles, 139 F.3d at 1037 (same). It bears repeating that this is the most important factor in our Eleventh Amendment arm of the state analysis. See Delahoussaye, 937 F.2d at 147-48. In assessing this second factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations. See Jacintoport Corp., 762 F.2d at 441.

**1**

The Orleans Parish District Attorney's Office submits that the state is required under LA. REV. STAT. ANN. § 13:5108.1 to indemnify it in the event of an unfavorable § 1983 judgment.[6] We have before considered an indemnification statute, obliging the state to pay for judgments rendered against the defendant in his official capacity, sufficient to fulfill this factor.[7] See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986). In fact, Voisin's dealt with the very statute the Orleans Parish District Attorney's office cites today. There, we confronted a § 1983 suit brought against the Secretary of the Louisiana Department of Wildlife and Fisheries in his official capacity. In assessing the Secretary's immunity under the Eleventh Amendment, we relied upon both §§ 13:5108.1 and

---

[6]That section provides in pertinent part:

> A. It is hereby declared to be the public policy of this state that the state shall hold harmless and indemnify *all officers and employees of the state* from any financial loss which, for purposes of this Section, shall mean and include . . . judgment in federal court brought pursuant to the provisions of Sections 1981 through 1983 of Title 42 of the United States Code by reason of alleged negligence or other act by an officer or employee, provided that such officer or employee at the time damages were sustained was acting in the discharge of his duties and within the scope of his employment and that such damages did not result from the intentional wrongful act or gross negligence of such officer or employee.

See LA. REV. STAT. ANN. § 13:5108.1 (emphasis added). That is, § 13:5108.1 deals with indemnification in the event of a federal civil rights lawsuit. This is in contrast to § 13:5108.2, which deals with indemnification in the event of a state negligence lawsuit.

[7]With respect to indemnification statutes, it is important to remember that this lawsuit was not brought against District Attorney Harry Connick in his personal (sometimes referred to as individual) capacity. The Eleventh Amendment does not come into play in personal capacity suits, see Flowers v. Phelps, 964 F.2d 400, 401 n.2 (5th Cir. 1992) (per curiam), and the existence of an indemnification statute promising to pay judgments when an officer is sued in his individual capacity does not extend the Eleventh Amendment's protections around the officer. See Flowers, 964 F.2d at 401 n.2 (citing Downing v. Williams, 624 F.2d 612, 626 (5th Cir. 1980) ("Such an indemnity statute is only an agreement between the state and these individuals and cannot thereby be converted into an extension of Eleventh Amendment immunity by the state."), vacated on other grounds, 645 F.2d 1226 (5th Cir. 1981) ).

18

13:5108.2 in concluding that, because the state would be obliged under Louisiana law to indemnify the Secretary, the lawsuit was really one against the state. See id. at 188; see also Hughes v. Savell, 902 F.2d 376, 379 n.5 (5th Cir. 1990).

However, § 13:5108.1 does not apply to district attorneys. The section explains that its protections extends to "officers and employees of the state," see LA. REV. STAT. ANN. § 13:5108.1, but relies on § 13:5108.2 to clarify whom this phrase includes. See La. Atty. Gen. Op. No. 80-105A (Jan. 8, 1981); see also Voisin's, 799 F.2d at 188 (citing both §§ 13:5108.1 and 13:5108.2, even though the case dealt with a § 1983 suit, and § 13:5108.2 primarily deals with indemnification in negligence suits). In 1984, the state legislature amended § 13:5108.2 to exclude district attorneys from state indemnification.[8] See LA. REV. STAT. ANN. § 13:5108.2 (explaining that the phrase "an official, officer, or employee of the state" no longer includes "parish officials set forth and named in Article VI, Sections 5(G) and 7(B) of the Constitution of Louisiana."); LA. CONST. art. VI, §§ 5(g) & 7(b) (mentioning district attorneys in both); see also La. Atty. Gen. Op. No. 89-210A (Sept. 8, 1989) (recognizing this turn of events).

We thus conclude that § 13:5108.1 is properly read to exclude district attorneys from indemnification in the event of a § 1983 suit.[9] Because we conclude that the state will not be required

---

[8]The apparent cause of this statutory amendment was a Louisiana Supreme Court decision interpreting § 13:5108.2 to include district attorneys. See Diaz v. Allstate Insurance Company, 433 So.2d 699 (La. 1983).

[9]In addition, it is possible that § 13.5108.1 has no application here even if it included district attorneys. First, that section requires that the Attorney General be contacted five days after the lawsuit is filed. See LA. REV. STAT. ANN. § 13:5108.1(b). According to testimony from Camille Grace Buras, first assistant to District Attorney Harry Connick, that has not occurred in this case. (In fact, Ms. Buras testified that to her knowledge the Attorney General's office is never contacted as required by § 13:5108.1(b) when Mr. Connick in his official capacity is the subject of a civil rights

19

under § 13.5108.1 to indemnify the Orleans Parish District Attorney's office, we need not consider Hudson's alternative argument that the Supreme Court's decision in Regents of the University of California v. Doe, 519 U.S. 425 (1997) overrules our holding in Voisin's that a state's indemnification statute is sufficient to count this factor in favor of Eleventh Amendment immunity.[10] The sum of our first inquiry, then, is that damages awarded against the Orleans Parish District Attorney's office are not required under Louisiana indemnification law to come from the state's treasury.

**2**

Yet this does not end our inquiry. We can still count this factor in favor of Eleventh Amendment immunity if it is nonetheless clear that a judgment will be paid with state funds because

---

lawsuit, suggesting that the Orleans Parish District Attorney's office does not actually believe it could be indemnified under the provision.). Second, § 13.5108.1 requires that indemnification occur only when "negligence or other act by an officer or employee" is the subject of the lawsuit. See LA. REV. STAT. ANN. § 13:5108.1(b) Presumably, this means to exclude indemnification when the defendant acted willfully, knowingly, or with deliberate indifference. Our review of the record does not reveal with which state of mind the district attorney's office is alleged to have acted.

[10]In Regents of the University of California v. Doe, the Supreme Court confronted the question of "whether the fact that the Federal Government has agreed to indemnify a state instrumentality against the costs of litigation, including adverse judgments, divests the state agency of Eleventh Amendment immunity." 519 U.S. at 426. The Court unanimously answered this question in the negative, reasoning that "with respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." Id. at 431.

Hudson interprets Doe to render indemnification entirely irrelevant for purposes of Eleventh Amendment analysis. While we do not reach the question, we cannot help but notice that the Court made sure to observe that "the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the state and the entity or individual being sued." Id. at 430.

20

the state is responsible for the defendant's general debts and obligations. See Jacintoport, 762 F.2d 441. We do not find this to be the case, however.

Our conclusion is best illustrated by examining the 1995 budget of the Orleans Parish District Attorney's office, which totaled about $6.59 million. Of this amount, the State paid approximately $3.7 million, while the City of New Orleans contributed a little more than $1.75 million.[11] Importantly, either all or substantially all of the funds from the State are earmarked for specific purposes, namely salaries for the attorneys working there and for the prosecution costs of child support cases. These funds cannot be used to pay a § 1983 judgment. On the other hand, the funds from the City are discretionary, meaning the office can use those funds for any purpose whatsoever. Moreover, the exact amount of these discretionary funds significantly fluctuates from year to year. Peter Brandt, the Orleans Parish District Attorney's office's executive assistant district attorney, testified that the City was obligated by state statute to fund the operation of the office, and that the exact amount is identified after the office prepares a budget and approaches the city council with a number based on the amount of funding it thinks is needed to run the office properly. Given this, we find it considerably easier to say that the City of New Orleans, rather than the state, is responsible for the general debts and obligations of the Orleans Parish District Attorney's office.

Of course, the City might decline to pay the portions of the budget dealing with the judgment. Putting aside Hudson's contention that the office would be able to compel the City, either though the state judicial system or through the state legislature, to pay the judgment under LA. REV. STAT. ANN. § 13:5108.1(b), it is within the realm of possibility that the Orleans Parish District Attorney's office

---

[11]The remainder of funds came from the federal government or from private sources.

would be forced to go to the state legislature and appear before the appropriate committees in an attempt to have the state treasury pay the judgment. In fact, the office argues, this is what happened when a judgment was rendered against it in <u>Mairena v. Foti</u>, 816 F.2d 1061 (5th Cir. 1987).

However, we do not believe this thread arguably connecting the state and the Orleans Parish District Attorney's office is strong enough to bear the weight of the Eleventh Amendment.[12] It is not enough that there be a simple connection between the state and the defendant. Rather, "[w]e must look to see whether the entity "'stands in the shoes of the state itself.'" <u>Earles</u>, 139 F.3d at 1036 (citation omitted). If we cannot say that the Orleans Parish District Attorney's office is the "alter ego" of the state, we cannot provide it the protections of the Eleventh Amendment. <u>See id.</u> And this we cannot say. It is only a remote possibility that the state will elect to pay a judgment against the Orleans Parish District Attorney's office. Moreover, even if we were to assume that a state's voluntary, after-the-fact payment could be considered a "liability" on the state's treasury, the distance between the state and the office "discourages us from conferring immunity." <u>See Jacintoport</u>, 762 F.2d at 441-42 (finding the possibility that the State could be liable for a judgment if two other parties defaulted as having "only an ancillary effect on the State treasury" and therefore insufficient for purposes of the Eleventh Amendment).

---

[12]For one thing, it is woven out of pure speculation. Even ignoring the complexities of the state legislative procedure, and the even more chaotic nature of the budgeting process, we cannot help but notice that after the state paid the <u>Mairena</u> judgment, it passed two provisions arguably in an attempt to prevent this event from recurring: (1) § 42:1441.3, which according to Hudson assigns legal liability for such judgments to the City as opposed to the State; and (2) § 42:1441.2(b), which requires that the offices of the district attorney secure general liability insurance for itself and its officers. Remarkably, various officers of the Orleans Parish District Attorney's office testified that they were not even aware of § 42:1441.2(b). At best, the Orleans Parish District Attorney's office can only hope that the state will actually pass the bill it requests when there is an outstanding judgment.

Having inquired as to the state's liability for both an unfavorable judgment and the office's general debts and obligations, we find that the state is fiscally isolated from the Orleans Parish District Attorney's office. As such, we count this factor against Eleventh Amendment immunity.

## C

"The third factor we look to focuses on the degree of local autonomy the entity at issue enjoys." Pendergrass, 144 F.3d at 346. Because this case concerns a district attorney's office, we look with particularly keen interest at the amount of freedom the office has in prosecuting cases. See Crane, 766 F.2d at 194.

According to the state constitution, the Attorney General can interfere in the prosecution of cases, but only if it has cause and judicial authorization. See LA. CONST. art. IV, § 8. Naturally, the parties characterize this provision quite differently. Hudson submits that, in the vast majority of cases at least, Louisiana district attorneys' offices are completely unsupervised by the Attorney General. In fact, he points out that the Attorney General has never exercised his constitutional authority with respect to the Orleans Parish District Attorney's office. In contrast, the Orleans Parish District Attorney's office characterizes the state constitutional provision as providing the exact level of state oversight needed given the importance of prosecutorial independence.

Weighing these arguments against one another, we find that the balance tilts slightly towards Eleventh Amendment immunity. Louisiana law creates a viable check over the Orleans Parish District Attorney's office, an oversight mechanism by the Attorney General that was entirely absent in Crane. See Crane, 766 F.2d at 194 (describing TEX. REV. CIV. STAT. ANN. art. 333 (1973) as only requiring

23

reports by the district attorney upon the Texas Attorney General's demand).  Nevertheless, the state's involvement is at best infrequent, limited to cases where the state has cause and judicial authorization. This fact cautions us in attaching undue weight to this factor.

## D

The next factor we look to is "[w]hether the entity is concerned with primarily local, as opposed to state-wide problems." Pendergrass, 144 F.3d at 347. According to Hudson, three facts signal the local focus of the Orleans Parish District Attorney's office: first, that the district attorney is elected by, and accountable only to, voters in the relevant judicial district, see LA. REV. STAT. ANN. §16.1; second, that the state constitution requires the district attorney to have resided in that district for two years, see LA. CONST. art. V, § 26(a), presumably to ensure that the district attorney is intimately familiar with the problems encountered by the people in that district; and third, that the district attorney's prosecutorial powers end at the boundary line of the district in which he serves. In response, the Orleans Parish District Attorney's office points out that it prosecutes crimes against the state, not just Orleans Parish.  It is only for the sake of convenience, the office says,  that the state legislature decided to divide the state into districts.

As we have twice before dealt with district attorneys' claims of Eleventh Amendment immunity, these arguments are not new ones.  We find Hudson's argument persuasive because our case law directs us to the same factors he cites.[13]  Our analysis has emphasized two concerns.  First,

---

[13]Admittedly, the Orleans Parish District Attorney's office has a point.  The crimes it prosecutes are violations of state criminal law as opposed to  local ordinances.  Yet this fact has not given us pause in the past.  See Chrissy F. by Medley v. Mississippi Dept. of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991); Crane, 766 F.2d at 194.  Indeed, we never even mentioned this fact in Chrissy

we have found it highly useful to examine the geographic reach of the district attorney's prosecutorial powers. For example, when concluding that Texas district attorneys were local officials we thought it significant that their prosecutorial powers were "limited to the terri tory of [their] district." See Crane, 766 F.2d at 194. On the other hand, when we came to the opposite conclusion with respect to Mississippi district attorneys we found it important that the state's law provided them the power to represent the state outside the district. See Chrissy F. by Medley v. Mississippi Dept. of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991). Second, we have looked at whether the district attorney is elected by voters locally or state-wide. See Crane, 766 F.2d at 194 (holding that the local election of Texas district attorneys indicated they are local officials).

Conducting these same inquiries, we conclude that the Orleans Parish District Attorney's office is concerned with local problems. First, the parties stipulated to the fact that the Orleans Parish District Attorney has jurisdiction extending only to the limits of the geo graphical confines of his judicial district. Second, the parties stipulated to the fact that Louisiana district attorneys are elected by only those voters of the judicial district in which they serve. As such, we count this factor against Eleventh Amendment immunity.

## E

The fifth factor we look to is the entity's "capacity to sue and be sued." Earles, 139 F.3d at 1038. We count this factor against Eleventh Amendment immunity if the entity has these abilities. See Pendergrass, 144 F.3d at 347. The parties agree that the Orleans Parish District Attorney's office,

F. and Crane. As our analysis with respect to this fourth factor did not take this fact into account, we similarly decline to so in the instant case.

25

as an entity, cannot itself sue nor be sued; rather all suits are brought by or against the district attorney in his official capacity. As we observed earlier, however, the distinction between the entity and an entity's officer sued in his official capacity is irrelevant for purposes of this Eleventh Amendment inquiry. Thus, this factor cuts against Eleventh Amendment immunity.

## F

Finally, our last inquiry concerns whether the entity has the right to hold and use property. See Pendergrass, 144 F.3d at 347. If it does, we consider this factor as counseling against Eleventh Amendment immunity. See id. The district court found that different facts uncovered in this inquiry pointed in different directions, an assessment with which we agree. The property used by the Orleans Parish District Attorney's office is either in the name of the office (for example, all of the automobiles and computers used by the office) or in the name of the City of New Orleans (for example, the titles to the buildings housing the office). On the other hand, the property used by the Orleans Parish District Attorney's office is subject to the property control laws of the Division of Administration for the State, and the automobiles used by the office were all purchased with funds from the state. Given the conflict, this factor has little effect on our analysis. See id.

## CONCLUSION

Although the question is a close one given the presence of some facts suggesting a close relationship between the Orleans Parish District Attorney's office and the state, the balance ultimately tilts against Eleventh Amendment immunity. Most importantly, our review of Louisiana law indicates

26

that public funds from the state treasury will not be used to cover an adverse judgment against the entity. Furthermore, the indications of a close relationship between the Orleans Parish District Attorney's office and the state are at least undermined, if not equaled, by facts suggesting a more distant relationship. After carefully weighing these factors against one another, we conclude that the Orleans Parish District Attorney's office is not an arm of the state. Accordingly, we REVERSE the decision of the district court and REMAND the case to the district court for further proceedings consistent with this opinion.