Keenan PORCHE et al.,

v.

ST. TAMMANY PARISH SHERIFF'S
OFFICE.

No. Civ.A. 98–3536 S.

United States District Court,
E.D. Louisiana.

Oct. 5, 1999.

John G. Discon, Thomas Massa Discon, Gregory T. Discon, Discon Law Firm, Mandeville, LA, for Keenan Porche, plaintiff.

Paul S. Hughes, Talley, Anthony, Hughes & Knight, LLC, Bogalusa, LA, Charles M. Hughes, Jr., Craig Joseph Robichaux, Talley, Anthony, Hughes & Knight, LLC, Mandeville, LA, for defendant.

## ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that Sheriff Rodney Strain's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule Civil Procedure 12(b)(1) is **DENIED.** (Document # 18.)

## I. BACKGROUND

Keenan and Dana Porche (the Porches), the natural parents and representatives of the estate of Keenan Porche, Jr. (Keenan), filed a complaint against Rodney Strain, in his capacity as Sheriff of St. Tammany Parish Office, alleging claims under the General Maritime Law pursuant to 28 U.S.C. § 1331 and Fed.R.Civ.P. 9(h). On November 30, 1997, a vessel owned and operated by Keenan's uncle, Bennie Mills, capsized in waters located in St. Tammany Parish. Keenan died on December 1, 1997. The Porches allege that the negligence of Sheriff Strain in his official capacity was the proximate cause of the accident because the Sheriff failed to follow appropriate search and rescue protocol and procedures, to contact other available search and rescue agencies, and to effectuate an appropriate search. The Porches seek damages for loss of love and affection of their son, pre-death pain and suffering, medical expenses, and funeral expenses; legal interest from the date of the accident; costs of the proceedings; and equitable relief.

## II. DISCUSSION

Sheriff Strain filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Sheriff Strain asserts that the suit against him in his official capacity is barred by the Eleventh Amendment and there is no admiralty or maritime jurisdiction

### A. Eleventh Amendment Immunity

■ In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, where the jurisdictional challenge does not implicate the merits of the cause of action, the jurisdictional basis must survive both facial and factual attacks before the district court can address the merits of the claim. *Lewis v. Knutson,* 699 F.2d 230, 237 (5th Cir.1983).

■ The Eleventh Amendment, which is a bar to the jurisdiction of the federal court, "is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 506, 33 L.Ed. 842 (1890). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Even though a State is not a named party, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* at 1356.

■ "[Eleventh Amendment] immunity applies to state agencies that may be prop-

erly characterized as arms of the State, as well as to state employees acting in their official capacity." *Harter v. Vernon,* 101 F.3d 334, 336 (4th Cir.1996) (internal quotation, brackets, and citations omitted). The Eleventh Amendment affords no protection to local government entities and employees. *Id.* Even though political subdivisions such as parishes, counties, and municipalities exist at the behest of their State, the Eleventh Amendment affords them no protection. *See Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 1877, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring in part and concurring in judgment); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). "[F]or purposes of the Eleventh Amendment, [courts] do not generally distinguish between suits brought against an entity and suits brought against the entity's officers in their official capacity." *Hudson v. City of New Orleans,* 174 F.3d 677, 680 (5th Cir. 1999).

■ In *Hess v. Port Authority Trans–Hudson,* 513 U.S. 30, 115 S.Ct. 394, 400, 404, 130 L.Ed.2d 245 (1994) (case involving a Compact Clause entity created by two states and the federal government), the Supreme Court announced that Eleventh Amendment inquiries should be guided by the Eleventh Amendment's twin reasons for being: preventing judgments from depleting state treasuries and maintaining the integrity retained by each state in the federal system. The vulnerability of the State's purse is the most salient factor in Eleventh Amendment determinations. *Id.* "The purpose of the immunity therefore largely disappears when a judgment against the entity does not entail a judgment against the state." *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435, 440 (5th Cir.1985).

The Court of Appeals for the Fifth Circuit has utilized six factors to identify when a suit against a governmental entity, or an official of the entity sued in his official capacity, is considered to be a suit against the state:

1. Whether the state statutes and case law view the agency as an arm of the state;

2. The source of the entity's funding;

3. The entity's degree of local autonomy;

4. Whether the entity is concerned primarily with local as opposed to statewide problems;

5. Whether the entity has the authority to sue and be sued in its own name; and

6. Whether the entity has the right to hold and use property.

*Hudson,* 174 F.3d at 681 (citing *Clark v. Tarrant County, Texas,* 798 F.2d 736, 744 (5th Cir.1986)). "A defendant need not possess each of the above attributes to benefit from the Eleventh Amendment." *Id.* The factors are not equal to one another, and the second is the most important. *Id.* The test is not a precise one; the factors help the court to balance the equities and determine whether the suit is against the state itself. *Id.* In the context of Eleventh Amendment analysis, unlike liability analysis in suits under 42 U.S.C. § 1983, the court does not look at the function of the officer being sued. *Id.* at 682, n. 1 (distinguishing *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), which held that the Monroe County Sheriff was a state policymaker while acting in a law enforcement capacity, as opposed to a county policymaker, for purposes of county liability under 42 U.S.C. § 1983). The court looks to the state's view of the entity in question by looking at state law to see how the state perceives the entity; however, federal law controls the scope of the analysis. *Id.* at 685. A court may consider state statutes, regulations, and constitutional provisions which characterize the office of sheriff, and the holdings on state courts on the subject. *See Harter,* 101 F.3d at 342.

■ This case calls upon the court to assess whether the sheriffs of Louisiana are arms of the state and thereby entitled to the protection of the Eleventh Amendment. Courts in several other states have resolved this issue with mixed results. Sheriffs in Florida, *Hufford v. Rodgers*, 912 F.2d 1338, 1341–42 (11th Cir.1990); Wisconsin, *Soderbeck v. Burnett County*, 821 F.2d 446, 451–52 (7th Cir.1987); and North Carolina, *Harter*, 101 F.3d at 342, do not enjoy Eleventh Amendment immunity. Sheriffs in Alabama, *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989); South Carolina, *Cromer v. Brown*, 88 F.3d 1315 (4th Cir.1996); and Maryland, *Levinson–Roth v. Parries*, 872 F.Supp. 1439, 1447 (D.Md.1995) enjoy Eleventh Amendment immunity.

The first factor to consider in analyzing the issue of Eleventh Amendment immunity of sheriffs in Louisiana is how the state perceives the office of sheriff. Article 5, § 27 of the Louisiana Constitution discusses the sheriffs under the "Judicial Branch", a portion of the constitution reserved for state government:

> In each parish a sheriff shall be elected for a term of four years. He shall be the chief law enforcement officer in the parish, except as otherwise provided by this constitution, and shall execute court orders and process. He shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law.

Even though the office of sheriff is created by the constitution, the State of Louisiana does not view the sheriff as a "state agency." *See* La.Rev.Stat. § 13:5102(A).[1] The definition of a "state agency" does not include any political subdivision or any agency of a political subdivision. *Id.* Under Louisiana law, the definition of a "political subdivision" includes "sheriff." La.Rev.Stat. § 13:5102(B).[2] Because, under federal law, political subdivisions are not protected by the Eleventh Amendment, *see Port Authority Trans–Hudson Corp.*, 110 S.Ct. at 1877, this factor weighs against conferring immunity.

The next factor to consider in resolving the issue of Eleventh Amendment immunity of sheriffs in Louisiana is the source of funding for the sheriffs to determine whether a judgment against the sheriff will be paid with state funds. Article 12, § 10(A) of the Louisiana Constitution states that "[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." A judgment against a political subdivision shall be paid from funds appropriated by the political subdivision against which the judgment is rendered. *Id.* at § 10(C); *see Jones v. Traylor*, 660 So.2d 933, 934 (La. Ct.App.1995) ("[P]ublic funds cannot be seized for payment of a judgment against the sheriff and the funds must be appropriated for that purpose."); *see also Baudoin v. Acadia Parish Police Jury*, 702 So.2d 715, 717 (La.Ct.App.1997) (citing La. Rev.Stat. § 13:5109(B)(2)) ("[a]ny judgment rendered in any suit filed against a political subdivision shall be exigible, payable, and paid only out of funds appropriated for that purpose by the named political subdivision."). Moreover, La.Rev.Stat. § 33:1441 provides:

> A. The state of Louisiana shall not be liable for any damage caused by a district attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision within the course and scope of his official duties, or damage caused by an employee of a district

---

1. R.S. 13:5102(A) provides in relevant part: " 'State agency' does not include any political subdivision or any agency of a political subdivision."

2. R.S. 13:5102(B) provides: "As the term is used in this Part, 'political subdivision' means any parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency."

attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision.

B. The provisions of Subsection A hereof are not intended to and shall not construed to affect any personal liability which may arise from damage caused by any public officer of a political subdivision, or by a district attorney, coroner, assessor, sheriff, clerk of court, or the employee of any such public officer. . . .

A sheriff shall pay, upon warrant drawn by him, final judgment obtained against his office for official acts from the sheriff's salary fund. La.Rev.Stat. 33:1422(c). Further, La.Rev.Stat. § 1450.1[3] provides that a sheriff is authorized to contract for insurance to cover losses from negligent acts, and the premiums are to be paid out of the sheriff's general fund.·

Accordingly, the state is fiscally isolated from judgments against the sheriff. This factor weighs against Eleventh Amendment immunity.

The third factor to consider in resolving the issue of Eleventh Amendment immunity of sheriffs in Louisiana focuses on the degree of local autonomy enjoyed by the sheriff. An analysis of the extent of the sheriff's independent management authority determines the sheriff's autonomy. *See Jacintoport Corp.*, 762 F.2d at 442. The court need not dwell on this factor because, under the Louisiana Constitution and its laws, a sheriff is virtually an autonomous local government official. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468–70 (5th Cir.1999). This factor weighs against Eleventh Amendment immunity.

The next factor to consider in resolving the issue of Eleventh Amendment immunity of sheriffs in Louisiana explores whether the sheriff is concerned with primarily local, as opposed to state-wide problems.

Pursuant to the Louisiana Constitution, the sheriff is the chief law enforcement officer of the parish in which he is elected. A sheriff is responsible to the people of the parish, and the functions are typically local. Although the sheriff enforces state laws and performs certain duties for the benefit of the state, these duties are generally performed only within a given parish. Thus, this factors weighs against Eleventh Amendment immunity.

The next factor to consider in resolving the issue of Eleventh Amendment immunity of sheriffs in Louisiana involves the sheriff's capacity to sue and be sued. "The law of Louisiana affords no legal status to the 'Parish Sheriff's Department' wherein said department can sue or be sued, such status being reserved for the Sheriff, individually." *Liberty Mut. Ins. Co. v. Grant Parish*, 350 So.2d 236, 238 (La.Ct.App.1977). The distinction between the Office of the Sheriff and the sheriff sued individually in his official capacity is irrelevant for purposes of Eleventh Amendment immunity. *See Hudson*, 174 F.3d at 691. Therefore, the local sheriff in his official capacity is the proper person to sue or bring suit in a cause of action involving a parish's sheriff department.

The final factor to consider in resolving the issue of Eleventh Amendment immunity of sheriffs in Louisiana concerns the sheriff's right to hold and use property. La.Rev.Stat. § 33:4713 requires the parish to provide and bear the expense of offices as may be needed by the sheriffs of the district and circuit courts. The parish council supplies the sheriff with furniture and other equipment required for conducting business, and conveyance used for service of process must be supplied by the sheriff at his own expense. "Notwithstanding the provisions of R.S. 33:4713, a sheriff and ex officio tax collector may

---

**3.** "Sheriffs of the parishes of the state of Louisiana are hereby authorized to contract for insurance with any insurance company authorized to do business under the laws of the state of Louisiana to cover loss or damage

from any negligent acts of the sheriff or his deputies, in the performance of the duties of his office, the premiums on said insurance to be paid by the sheriff as an expense of his office out of the sheriff's general fund. . . ."

purchase and equip such real property as is necessary in the performance of his duties, including but not limited to an adequate and safe jail. The ownership of such real property shall be vested in the parish law enforcement district." La.Rev.Stat. § 33:1422(D).

An analysis of the *Hudson* factors leads to a determination that a sheriff in Louisiana may not be properly characterized as an arm of the state and, therefore, the Eleventh Amendment affords a sheriff in Louisiana no protection against being sued. Accordingly, Sheriff Strain is not entitled to Eleventh Amendment immunity from suit.

## B. Jurisdiction under General Maritime Law

"Where the factual findings regarding subject matter jurisdiction are intertwined with the merits, ... the case should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is immaterial or is wholly insubstantial and frivolous." *Clark*, 798 F.2d at 741–42. "The questions of subject matter jurisdiction and the merits will normally be considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Id.* at 742. "Where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, and assuming that the plaintiff's federal claim is neither insubstantial, frivolous, nor made solely for the purpose of obtaining jurisdiction, the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits." *Id.*

The United States Constitution extends federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const., Art. III, § 2. Congress has embodied that power in 28 U.S.C. § 1331(a), which states in part that federal district courts have "original jurisdiction ... of ... [a]ny civil case of admiralty or mari-

time jurisdiction." The Extension of Admiralty Jurisdiction Act of 1948, 62 Stat. 496, invested "admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995) (involving Rule 12(b)(1) motion to dismiss for lack of admiralty jurisdiction).

[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §§ 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. 46 U.S.C.App. § 740. The connection test raised two issues. A court, first must "assess the general features of the type of incident involved," [*Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990) ], to determine whether the incident has "a potentially disruptive impact on maritime commerce," *id.* at 2896, n. 2. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.* at 2897, 2896, and n. 2.

*Grubart, Inc.*, 115 S.Ct. at 1048.

The parties dispute whether the alleged tort was committed while on navigable waters and whether the rescue activity giving rise to the alleged incident involved bears a substantial relationship to traditional maritime activity. Because these factual findings regarding jurisdiction are intertwined with the merits of the plaintiffs' claim under general maritime law that the sheriff was negligent in conducting the rescue operation, dismissal for lack of subject matter jurisdiction is not proper unless the alleged claim is wholly insubstantial or frivolous. The case is not whol-

ly insubstantial or frivolous because there is a genuine question whether the sheriff was engaged in traditional maritime activity. *See Kelly v. United States,* 531 F.2d 1144, 1147 (2nd Cir.1976) (rescue operations of the Coast Guard conducted on navigable waters bear a significant relationship to traditional maritime activities); *Hiner v. Longstaff,* 543 F.Supp. 1123, 1124 (W.D.Wash.1982) (emergency first aid rendered by paramedics was fortuitously and incidentally connected to navigable waters and bears no relationship to traditional maritime activity); *Icelandic Coast Guard v. United Technologies Corp.,* 722 F.Supp. 942, 946 (D.Conn.1989) (flights by coast guard aircraft in preparation for marine rescue bears a significant relationship to traditional maritime activities). Therefore, the court finds that the case should not be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

The court concludes that sheriffs in Louisiana are not arms of the state and, therefore, are not entitled to Eleventh Amendment immunity. Moreover, the court does not dismiss for lack of subject matter jurisdiction because the factual findings regarding jurisdiction over the maritime claim are intertwined with the merits of the case, and the cause of action is neither insubstantial or frivolous. Accordingly, the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied.