v.

**LOWNDES COUNTY DEPARTMENT OF FAMILY AND CHILDREN SERVICES, et al., Defendants.**

No. 1:99CV162–D–D

United States District Court,
N.D. Mississippi,
Eastern Division.

March 13, 2000.

745

David E. Rozier, Jr., Rozier Law Firm, P.C., Jackson, MS, for plaintiffs.

Maudine Gatlin Eckford, Mississippi Atty. General's Office, Jackson, MS, for Lowndes County Dept. of Family and Children Services, Donna Reeves, Janice Stockman, Tessa Hannah, defendant.

H. Lee Morrison, Jr., Tubb, Stevens & Morrison, West Point, MS, for Sally Kate Winters Memorial Children's Home, defendant.

## OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the State Defendants[1] to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment. Upon due consideration, the court finds that the motion should be granted.

### A. Factual Background

In the spring of 1996, the Lowndes County Department of Public Welfare placed Y.H., a fifteen year old male foster child, in the Sally Kate Winters Memorial Children's Home (the Winters Home), a privately funded group home. Shortly thereafter, officials at the Winters Home requested that Y.H. be removed from the home due to serious behavioral problems.

Following Y.H.'s removal from the Winters Home, Defendant Tessa Hannah (Hannah), a Lowndes County social worker, contacted Plaintiff Ms. Johnnie Bradford (Bradford) to request that Bradford take Y.H. into her home as a foster child. About a half hour later, Hannah and Y.H. arrived and Y.H. was formally placed into Bradford's home. Shortly thereafter, on June 11, 1996, Y.H. sexually assaulted and sodomized C.A., Bradford's six year old grandson. Bradford immediately reported the incident and Y.H. was promptly removed from the Bradford home.

The Plaintiffs brought the current action on April 16, 1999, pursuant to, *inter alia*, 42 U.S.C. § 1983. The Plaintiffs allege that, as a result of the placement of Y.H. into Bradford's home, the State Defendants deprived the Plaintiffs of their liberty without due process of law in contraven-

tion of the Fourteenth Amendment to the United States Constitution. The Plaintiff also has state law claims pending against the Winters Home. The State Defendants have now moved to partially dismiss or, alternatively, for summary judgment.

### B. Summary Judgment Standard

Because matters outside the pleadings were presented to the court in conjunction with this motion, the court treated the motion as one for partial summary judgment as provided for in Rules 12(b) and 56 of the Federal Rules of Civil Procedure.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." Fed. R.Civ.P. 56(e). While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**1.** The Lowndes County Department of Public Welfare, now known as the Department of Human Services, Family and Children Services Division, and its employee-defendants Donna Reeves, Janice Stockman and Tessa Hannah will be referred to collectively as the "State Defendants," except where required for clarity.

242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### C. Discussion

#### 1. Eleventh Amendment

 The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment thus negates federal jurisdiction over covered suits, including federal suits against a state brought by the citizens of that state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

 The Eleventh Amendment's reach is not limited to suits where a state is formally named as a defendant; any suit in which a state is the "real, substantial party in interest" is barred. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Earles v. State Bd. of Certified Pub. Accountants of Louisiana*, 139 F.3d 1033, 1036 (5th Cir.1998). Thus, this immunity covers state agencies that may be properly characterized as arms of the state. *Porche v. St. Tammany Parish Sheriff's Office*, 67 F.Supp.2d 631, 632 (E.D.La.1999). Moreover, the Eleventh Amendment bars claims for damages when the claimant seeks damages from the state's officers in their official capacities

and the damages would be paid out of the state treasury. *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir.1991).

 Identifying when a state is the real, substantial party in interest is often not an easy task. In determining whether a given agency operates as an arm of the state or is a purely local political subdivision, courts consider the following factors:

(1) Whether the state, through statutes or case law, views the entity as an arm of the state;

(2) the source of the entity's funding;

(3) the entity's degree of local autonomy or degree of authority independent from the state;

(4) whether the entity is concerned primarily with local as opposed to statewide problems;

(5) whether the entity has the authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.

*Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir.1999). A defendant need not possess each of the above attributes to receive Eleventh Amendment immunity. *Id.* at 681–82. Nor are the factors equal to one another; the second factor is the most important. *Id.*

 The first factor the court must consider is whether state statutes and case law characterize the entity as an arm of the state. Mississippi Code Annotated § 43–1–9 creates the Lowndes County Department of Human Services (Public Welfare) as a county department within the Mississippi Department of Human Services, which is itself created at § 43–1–2. Naturally, the Mississippi Department of Human Services is considered a state agency. *Mississippi Dep't of Human Servs. v. Barnett*, 633 So.2d 430, 432 (Miss. 1993). The State Division of Family and Children Services is created within the Mississippi Department of Human Ser-

vices at § 43–1–51. And § 43–1–53 mandates that the Division of Family and Children's Services shall be formed at each level of the Department of Human Services, including at the county level.

The State Department of Human Services is responsible for developing policy, providing training and overseeing the implementation of services provided by the county divisions. Miss.Code Ann. § 43–1–53. Furthermore, the State Department of Human Services is specifically authorized, empowered and directed to provide child welfare services for the entire State of Mississippi. Miss.Code Ann. § 43–15–3. Finally, the State Department of Human Services has the authority and duty to administer or supervise all public child welfare services, including those services, responsibilities, duties and powers with which the county departments are charged. Miss.Code Ann. § 43–15–5.

In light of the foregoing statutory authority and case law, the court finds that this factor weighs in favor of the application of Eleventh Amendment immunity. Clearly, the State of Mississippi views the county departments of human services as arms of the state and as non-autonomous divisions within the State Department of Human Services.

The second, and most important, factor the court must consider is the source of the entity's funding. The evidence is overwhelming that the county departments of human services are primarily funded by the State of Mississippi, and that any judgment rendered in this lawsuit will be paid with state funds. The lone funding burden placed on the counties is the requirement to provide office space for the county departments of human services; any additional county funds are provided solely at the discretion of the county boards of supervisors. Miss.Code Ann. §§ 43–1–9, 43–1–11, 43–1–12, 43–15–7, 43–15–11. Moreover, should a county's Board of Supervisors choose not to provide funding for the county department of human services, the State Department of Human Services

must attempt to provide funding. *See* Chaffin, March 31, 1994, A.G. Op. # 94–0139 (if county "chooses not to fund … expenditures for the county department of human services, the Mississippi Department of Human Services would have to attempt to find funds to provide services …"); *see also* Trapp, February 15, 1995, A.G. Op. # 95–0022.

In light of the foregoing, the court is of the opinion that any judgment rendered against the Lowndes County Department of Human Services would be paid by state funds. And, as previously noted, "the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir.1987). As such, this factor weighs heavily in favor of Eleventh Amendment immunity applying in this case.

The third factor the court must consider is the entity's degree of local autonomy or degree of authority independent from the state. As alluded to previously, the county departments of human services have little or no autonomy or independence. Mississippi Code Annotated § 43–1–9, the section creating the county departments, makes this point quite clearly. The County Director of Human Services is appointed by the State Executive Director of Human Services and the State Director is ultimately responsible for the management of the county departments. Miss.Code Ann. § 43–1–9. The county departments must comply with all regulations issued by the State Department of Human Services and must submit reports as required by the State Department. *Id.* In fact, the county departments must even seek State Department approval in order to coordinate activities with other agencies. *Id.* And, it is the State Department which is given the authority to administer and supervise all "public child welfare services, including those services, responsibilities, duties and powers with which the county departments of [human services] are

charged ..." Miss.Code Ann. § 43–15–5. No evidence has been presented tending to support the conclusion that the county departments have any autonomy or independence whatsoever. As such, this factor weighs heavily in favor of Eleventh Amendment immunity for the State Defendants.

Even assuming, *arguendo*, that the three remaining factors weigh against the application of Eleventh Amendment immunity, the fact that the first three factors, particularly the critical second factor, so strongly favor Eleventh Amendment immunity leads the court to find that the State Defendants are entitled to immunity. As such, this suit cannot be maintained against either the Lowndes County Department of Human Services, Family and Children Services Division, or against Defendants Donna Reeves, Janice Stockman and Tessa Hannah, in their official capacities.

### 2. Qualified Immunity

██ Public officials are entitled to assert the defense of qualified immunity in a § 1983 suit for discretionary acts occurring in the course of their official duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). These public officials are shielded from liability for civil damages for those actions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. Here, Defendants Hannah, Reeves and Stockman assert the defense of qualified immunity.

██ The first inquiry in examining a defense of qualified immunity is whether the plaintiff has alleged "the violation of a clearly established constitutional right." *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, a constitutional right is clearly established if "in light of pre-existing law the unlawfulness [is] apparent." *Id.* The issue is an objective, albeit fact-specific, inquiry into whether a reasonable official could have believed that they were violating the plaintiff's constitutionally protected rights "under the circumstances of the complained of action." *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994); *see Hale v. Townley*, 45 F.3d 914, 918 (5th Cir.1995)("factual allegations are examined to determine whether they would be sufficient, if proven, to establish a violation of clearly established law."). Thus, in accordance with the mandate in *Siegert*, this court must examine the Plaintiff's claims, taken as true, to ascertain whether they are sufficient to allege the existence of violations of their clearly established constitutional rights.

██ The Plaintiffs allege that the State Defendants violated C.A.'s Fourteenth Amendment right to be free from state-created dangers to his bodily integrity; the Plaintiffs further allege that the State Defendants violated the Bradford family's right to be free from state-created insults to their intra-family relationships. The court finds that these allegations are insufficient and do not allege violations of clearly established constitutional rights of which a reasonable person would have known. As such, Defendants Hannah, Reeves and Stockman are entitled to qualified immunity.

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court explained that the Due Process Clause of the Fourteenth Amendment does not guarantee certain minimal levels of safety and security for citizens. *See Randolph v. Cervantes*, 130 F.3d 727, 729 (5th Cir.1997)("The Due Process Clause of the

Fourteenth Amendment confers upon an individual the right to be free of state-occasioned damage to [their] bodily integrity, not the entitlement to governmental protection from injuries caused by non-state actors."). Therefore, as a general rule, the failure of the state to protect a person against private violence does not amount to a violation of the Due Process Clause.

While the general rule forecloses governmental liability for the failure to protect persons from injury at the hands of private actors, the *DeShaney* Court noted that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. *DeShaney*, 489 U.S. at 198, 109 S.Ct. 998. The Court in *DeShaney* further noted that, in the *DeShaney* case, the State "played no part in [the] creation" of the dangers the Plaintiff faced. *Id.* at 201, 109 S.Ct. 998.

As a result of the foregoing language in *DeShaney*, many lower courts have concluded that liability under 42 U.S.C. § 1983 can be established when the state affirmatively puts a person in a position of danger that the person would not otherwise have been in. *See e.g., Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996). In these jurisdictions, a viable theory of liability exists under which a plaintiff injured by a private actor can attempt to demonstrate a constitutional deprivation of sufficient magnitude to support a § 1983 claim. This theory is known as the "state-created danger" theory.

The Plaintiffs claim that the state-created danger exception to the general *DeShaney* rule applies in this case. Therefore, assert the Plaintiffs, they have alleged a violation of their clearly established constitutional right to be free from state-created dangers to their bodily integrity and intra-family relationships. But, the Fifth Circuit has pointedly and repeatedly declined to adopt the state-created danger theory. *See Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir.1999); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir.1997). Therefore, the Plaintiffs' attempt to utilize the state-created danger theory to prevent the Defendants from receiving qualified immunity fails as a matter of law.

As such, the Plaintiffs have failed to allege violations of clearly established constitutional rights of which a reasonable person, in this jurisdiction, would have known.[2] Therefore, Defendants Hannah, Reeves and Stockman are entitled to qualified immunity.[3]

---

**2.** The Plaintiffs here also allege that the Defendants withheld information concerning Y.H.'s previous behavioral problems. But, in a case with strikingly similar facts, a Federal District Court held that the state does not have a constitutional obligation to foster parents to disclose information regarding the children placed in their homes. *Reed v. Knox County Dep't of Human Servs.*, 968 F.Supp. 1212, 1219 (S.D.Ohio 1997). The plaintiff foster parents in *Reed* had extremely disruptive, violent, and at least in one instance sexually violent children placed in their home; the conduct of the foster children led to the Plaintiffs' own children being harmed. The Plaintiffs argued that the state had failed to provide information on the background of the foster children prior to the Plaintiffs' agreeing to accept placement of the children. The court, granting the Defendants' motion for summary judgment on the Plaintiffs' § 1983 claim, ruled that such a failure to provide information did not provide the Plaintiffs with a valid claim. In so ruling, the court found *Griffith v. Johnston*, 899 F.2d 1427 (5th Cir.1990), analogous. In *Griffith*, the Fifth Circuit held that prospective adoptive parents do not have a constitutional right to be provided information by the state concerning children they are considering for adoption. *Griffith*, 899 F.2d at 1438.

**3.** The court notes that, even if the Fifth Circuit recognized the theory, the application of the state-created danger exception to the facts of this case would be of questionable value to the Plaintiffs because the State did not act alone in placing Y.H. into the Bradford home; the Bradfords voluntarily agreed to the placement and assumed some degree of responsibility for the supervision of Y.H. So, at most, this very unfortunate situation was a joint State/Plaintiff-created danger. Had a state official, such as a policeman or public school

### D. State Law Claims

Having dismissed the claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c). Therefore, the court shall dismiss the Plaintiffs' state law claims without prejudice.

### E. Conclusion

In sum, the court finds that Lowndes County Department of Human Services, Family and Children Services Division, and the Defendants Hannah, Reeves and Stockman (in their official capacities) are entitled to Eleventh Amendment immunity from suit. The court further finds that Defendants Hannah, Reeves and Stockman (in their individual capacities) are entitled to qualified immunity. Finally, the Plaintiffs' state law claims are dismissed without prejudice.

A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the State Defendants' motion for summary judgment is GRANTED;

(2) the Plaintiffs' federal claims are DISMISSED;

(3) the Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE; and

(4) this case is CLOSED.

All memoranda, depositions, declarations and other materials considered by the court in ruling on this motion are hereby incorporated into and made a part of the record in this action.

---

teacher, assaulted C.A. in the manner that Y.H. assaulted him, there is little room for doubt that the official would not be entitled to qualified immunity. Here, however, Y.H. was a private actor and the Fifth Circuit has simply not recognized the state-created danger theory. As such, the Defendants are entitled to qualified immunity because the constitutional right to be free from state-created dangers was not, and is not, clearly established in this jurisdiction.