**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2013

Lyle W. Cayce
Clerk

No. 12-20795

United States of America, ex rel, TERRI KING,

>    Plaintiff - Appellant

v.

UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER - HOUSTON,

>    Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-18

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Terri King ("King") appeals the district court's dismissal of claims she brought on behalf of the United States for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* The district court dismissed King's claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, holding that the University of Texas

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Health Science Center-Houston ("UTHSCH" or "the Center") is not subject to suit under the FCA's *qui tam* provisions and, in addition, is entitled to sovereign immunity.  We AFFIRM.

## FACTS AND PROCEEDINGS

King is a former associate professor at UTHSCH.  From 2001–2005, she served in the Center's Department of Internal Medicine.  In 2005, she accepted a position in the Center's Department of Pediatrics.  In March of 2001, King began working as a statistician and geneticist in a research lab under Dr. Dianna M. Milewicz's supervision.  Milewicz's research focused on thoracic aortic dissection.  According to King's complaint, she began to notice discrepancies in Milewicz's data in 2004.  King alleges that "[w]hen she began to bring these discrepancies to the attention of Milewicz, Milewicz began a retaliatory campaign against King that began with the writing of a false and defamatory employee performance review."

King filed suit on January 4, 2011, alleging that Milewicz falsified research data and results and failed to obtain her human research subjects' written informed consent.  She claims that the fraud was in connection with government-funded research and that Milewicz used falsified results in order to obtain federal funding.  The Center is claimed to have defrauded the federal government by, among other things, covering up Milewicz's misconduct relating to federal research grants.  King also claims that the Center retaliated against her for reporting this misconduct by hampering her research, relocating her to less favorable positions, and constructively firing her when she continued to raise concerns.

King's complaint alleges that the Center's actions constituted false claims under the FCA because, among other things, it "failed to fully

investigate and fraudulently covered up research misconduct by Milewicz in an effort to allow her and other researchers full access to federal grants for research." King also asserts a private action for retaliation and wrongful termination under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h), because "UTHSCH demoted King in retaliation[,] . . . derailed any chance of King becoming a tenured member of the faculty at UTHSCH[,] . . . and ultimately terminated King as a result of her reports of research misconduct." On February 22, 2012, the United States filed notice that it was not intervening.

On May 9, 2012, UTHSCH moved to dismiss King's complaint on three separate grounds: (1) UTHSCH, as a state agency, is not subject to liability under the FCA; (2) sovereign immunity bars King's FCA claims; and (3) King's complaint did not comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The district court granted the Center's motion on October 31, 2012, dismissing the case in its entirety "for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted."[1] King appeals.

**STANDARD OF REVIEW**

"We review a district court's ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction de novo." *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013). This court also "review[s] a district court's dismissal under Rule 12(b)(6) de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th

---

[1] Because the district court focused on the Center's sovereign immunity and whether it was subject to suit under the FCA's *qui tam* provisions, it did not address UTHSCH's arguments under Rule 9(b).

Cir. 2012) (internal quotation marks omitted). Finally, "sovereign immunity is a question of law which this court reviews de novo." *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998); *see also Khan v. S. Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, No. 03-30169, 2005 WL 1994301, at *2 (5th Cir. Aug. 19, 2005).

## DISCUSSION

King challenges the district court's dismissal of her *qui tam* claim based on its finding that UTHSCH is an "arm of the state," its holding that the Center is entitled to sovereign immunity from her retaliation claim, and its dismissal of her complaint without first granting King an opportunity to amend. UTHSCH claims that this court lacks jurisdiction over King's appeal because she failed to timely file her notice of appeal and, as a matter of law, did not show excusable neglect or good cause in her request for an extension of time.

### I. Timeliness of King's Appeal

"[T]he taking of an appeal within the prescribed time is mandatory and jurisdictional." *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (internal quotation marks omitted). Under 28 U.S.C. § 2107(a), parties must file notice of appeal "within thirty days after the entry of [any civil] judgment, order or decree." *See also* Fed. R. App. Proc. 4(a)(1)(A). But "[t]he district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. § 2107(c).

The district court entered its order of dismissal on October 31, 2012. King filed her notice of appeal, along with a motion for extension of time

pursuant to Federal Rule of Procedure 4(a)(5), on December 5, 2012, thirty-five days later.  Although she acknowledges that her appeal was late, she argues there was "excusable neglect" because her attorneys initially believed that because the United States was the "real party in interest" in FCA *qui tam* actions, Rule 4(a)(1)(B) applied, giving them sixty days to file the notice of appeal.  Her attorneys had busy trial dockets during November, and did not realize until early December that, under *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009), the thirty-day deadline for filing a notice of appeal applies in FCA *qui tam* actions in which the United States has not intervened.

The Fifth Circuit follows the Supreme Court's guidance in determining when to permit extensions of time under Rule 4(a)(5).

> When evaluating excusable neglect under Rule 4(a)(5), this court relies on the following standard:
>
> The determination is at bottom an equitable one, taking account all of the relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)).  We review a ruling on a Rule 4(a)(5) motion for excusable neglect for abuse of discretion.  *Id.*

UTHSCH claims that the district court abused its discretion by allowing King's Rule 4(a)(5) extension.  The Center cites two cases for the propositions that neither ignorance of the rules nor counsel's busy law practice is sufficient to establish excusable neglect, *Pioneer*, 507 U.S. at 395,

and ignorance of the law does not excuse the failure to comply with a deadline that is unambiguous. *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998).

The Center overstates *Pioneer*'s holding. The Court held only that counsels' failure to file on time could be imputed to their clients, and did not create rigid rules forbidding extensions of time based on ignorance of the rules or an attorney's workload. *Pioneer*, 507 U.S. at 397–98. Indeed, the *Pioneer* court focused on "the respondents' good faith and the absence of any danger of prejudice . . . or of disruption to efficient judicial administration posed by the late filings." *Id.* at 397. The delay here was only five days and did not prejudice UTHSCH. *Pioneer* does not compel us to find an abuse of discretion in the district court's grant of King's motion for an extension of time.

Nor does our opinion in *Halicki* foreclose a finding of excusable neglect in this case. In *Halicki*, we rejected a litigant's contention "that misconstruction of procedural rules *necessarily* should result in a finding of 'excusable neglect' where no prejudice results to the opposing party." *Halicki*, 151 F.3d at 469 (emphasis in original). We did not hold that misinterpretation of the rules could never constitute excusable neglect. And although we stated that "a district court's determination that the neglect was inexcusable is virtually unassailable" when "the rule at issue is unambiguous," *id*. at 470, this observation does not control our review of a district court's finding that the neglect *was* excusable.[2]

---

[2] We also agree with the district court's finding that "Rule 4(a)(1)(B)'s language permitting a notice of appeal to be filed within 60 days of the trial court's judgment when the United States is a party to the case is ambiguous in the context of FCA *qui tam* actions." Although King's counsel should have known that *Eisenstein* held the 30-day rule to apply to FCA *qui tam* actions, "'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer*, 507 U.S. at 394.

"Given the leeway granted to district courts" when evaluating excusable neglect, *Stotter*, 508 F.3d at 820, we hold that the district court did not abuse its discretion in granting King's motion for an extension of time to file her notice of appeal.

## II.  Ability to Sue UTHSCH Under the FCA's *Qui Tam* Provision

The FCA imposes liability to "*any person* who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C § 3729(a)(1)(A)–(B) (emphasis added).  In *Stevens*, the Supreme Court held "that the False Claims Act does not subject a State (or state agency) to liability" because neither a state nor state agency falls within the FCA's definition of a "person." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787–88 (2000).

King argues that the district court erred in dismissing her *qui tam* claims "by erroneously concluding that UTHSCH is an arm of the State of Texas and thus . . . not a 'person' who can be liable under the federal False Claims Act."  In her opening brief, King states also that "[t]he *Stevens* case was wrongly decided," that it "created an unwarranted exception to the FCA for states and state agencies," and that "[i]t is error to dismiss the *qui tam* claims against UTHSCH when *Stevens* should instead be reversed."  Because we lack the authority to reverse Supreme Court decisions, we focus instead on her arguments that UTHSCH is not an "arm of the state."

In *Stevens*, the Supreme Court stated that in cases where defendants move for dismissal on both statutory and Eleventh Amendment grounds, courts should address the statutory question first:

> We . . . have routinely addressed *before* the question whether the
> Eleventh Amendment forbids a particular statutory cause of
> action to be asserted against States, the question whether the
> statute itself *permits* the cause of action it creates to be asserted
> against States (which it can do only by clearly expressing such
> an intent). When these two questions are at issue, not only is
> the statutory question "logically antecedent to the existence of"
> the Eleventh Amendment question, but also there is no realistic
> possibility that addressing the statutory question will expand
> the Court's power beyond the limits that the jurisdictional
> restriction has imposed.

*Stevens*, 529 U.S. at 779 (internal citations omitted).  Pursuant to *Stevens*, we address first whether the FCA allows for King's suit against the UTHSCH.

As did the district court, we evaluate whether the Center is an arm of the state using the six-factor test set forth in *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744–45 (5th Cir. 1986).  Although *Clark*'s arm-of-the-state analysis took place in the context of determining Eleventh Amendment immunity, we have applied its test when determining whether an entity was subject to FCA liability.  *See U.S. ex rel. Adrian v. Regents of Univ. of Calif.*, 363 F.3d 398, 401 (5th Cir. 2004).

> In deciding whether a suit against an entity is in reality a suit
> against the state, several factors must be determined: (1)
> whether the state statutes and caselaw characterize the agency
> as an arm of the state; (2) the source of funds for the entity; (3)
> the degree of local autonomy the entity enjoys; (4) whether the
> entity is concerned primarily with local, as opposed to statewide
> problems; (5) whether the entity has authority to sue and be sued
> in its own name; and (6) whether the entity has the right to hold
> and use property.

*Khan*, 2005 WL 1994301, at *2; *see also Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997).  We address each factor in turn.

A.  Texas Statutes and Caselaw

A survey of Texas statutes and caselaw reveals that the first *Clark* factor weighs in favor of finding UTHSCH an arm of the state. The state constitution provides for the establishment of the University of Texas System. Tex. Const. art. VII, § 10 ("The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a University of the first class, to be located by a vote of the people of this State, and styled 'The University of Texas', for the promotion of literature, and the arts and sciences."). The Center is part of the University of Texas System. Tex. Educ. Code § 65.02(a) ("The University of Texas System is composed of the following institutions and entities: . . . (9) The University of Texas Health Science Center at Houston."). Texas statutes consider "a [public] university system or an institution of higher education" to be a "state agency." Tex. Gov't Code § 572.002(10)(B).

Texas courts also treat UTHSCH to be a state agency. In *Klein v. Hernandez*, 315 S.W.3d 1, 8 (Tex. 2010), the Texas Supreme Court held that a resident was an "employee of a state agency" in finding him entitled to immunity. *See also id.* at 6 (referencing legislative materials referring to UTHSCH as "a state agency-owned school"). In *Illoh v. Carroll*, No. 14-09-01001-CV, 2012 WL 1570991, at *1 (Tex. App.—Houston [14th Dist.] May 3, 2012, no pet. h.), a Texas Court of Appeals referred to the "governmental-entity University of Texas Health Science Center at Houston" when evaluating whether the Texas Tort Claims Act's limited waiver of immunity applied to a UTHSCH doctor. In *Cheatham*, the court referred to "UTHSCH, a governmental unit" when reviewing claims against "two UTHSCH-employed doctors." *Univ. of Tex. Health Sci. Ctr. at Hous. v. Cheatham*, 357 S.W.3d 747, 748 (Tex. App.—Houston [14th Dist.] 2011, review denied). The opinion goes on to refer to the defendants as "government-employed doctor[s]"

and reviews statutory provisions governing the conduct of "government employee[s]." *Id.* at 749.

King argues that these cases "never actually characterize UTHSCH as an 'arm of the state,'" that *Klein* never directly implicated UTHSCH or sovereign immunity, and that other cases referring to the Center as a "governmental unit" are meaningless because that term is much broader than what is required for finding an entity to be an "arm of the state." We acknowledge that there does not appear to be any case that evaluates all six *Clark* factors and finds the Center to be an arm of the state for either FCA or sovereign immunity purposes. But we do not read *Clark*'s first factor as requiring an entity claiming sovereign immunity to first identify on-point court decisions evaluating the issue and holding it to be entitled to sovereign immunity. If that were the case, we would not need a six-factor test.

We find the aforementioned Texas authorities to weigh in favor of UTHSCH being an arm of the state.

B.  Sources of Funding

According to King, "[f]rom 2005 until 2009, state funding and federal funding have contributed an approximately equal percentage of the revenue collected by UTH[S]CH" and "[s]tate funding has only contributed between 23% and 26.5% of the gross revenue for UTHSCH from 2005 to 2009." Despite King's attempts to downplay state funding's importance, the magnitudes are substantial. The district court noted that in 2009, UTHSCH took in more than $26 million from student tuition and fees, received about $170 million in direct state appropriations, and received over $25 million from other state agencies.

King asserts that despite the significant amounts of state funding, UTHSCH would be unable to reach into segregated state funds in order to pay a judgment here because the Center's federal and state funding are "strictly and carefully segregated," with state funding only available to support state-funded missions.  We disagree.

"[T]he most *significant* factor in assessing an entity's status is whether a judgment against it will be paid with state funds."  *Richardson*, 118 F.3d at 455 (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987)).  But this does not mean we can find sovereign immunity or an arm of the state only "where payment would be directly out of the state treasury."  *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 560 (5th Cir. Unit A 1982).  "The crucial question . . . is whether use of . . . unappropriated funds to pay a damage award . . . would interfere with the fiscal autonomy and political sovereignty of Texas."  *Id.* at 560–61.

The district court in *United Carolina* found that the Eleventh Amendment did not bar suit against Stephen F. Austin State University ("SFA") in part because "SFA could itself pay such an award because it had substantial unappropriated, separately held, locally generated funds" and, as a result, "payment of an award c[ould] be made without resort to general revenues of the state or legislative appropriation."  *Id.* at 559–60.  We reversed, holding that "[t]he key is not the ability to identify segregated funds, but the larger concept of jurisdiction over state sovereignty which the eleventh amendment proscribes."  *Id.* at 560.  We found that the SFA's local funds were "either held in the Treasury or restricted as to use," were "subject to audit and budget planning," and as a result "any award from those funds would directly interfere with the state's fiscal autonomy."  *Id.* at 561.

No. 12-20795

Similarly, in *Jagnandan v. Giles*, we held that tuition refunds would implicate the state treasury.  538 F.2d 1166 (5th Cir. 1976).  The tuition "fees were factored into the preparation of the annual budget for [Mississippi State University] and were relied upon by the state legislature in determining the maximum amount of expenditures allowed." *Id.* at 1176.  The refunds would have "add[ed] an expenditure not figured in the budget." *Id.*  We explained:

> The Eleventh Amendment was fashioned to protect against federal judgments requiring payment of money that would interfere with the state's fiscal autonomy and thus its political sovereignty.  Retroactive monetary relief . . . would have just that effect.  Mississippi has devised a complex statutory design which governs the state's schools of higher education and their control by the Board of Trustees.  The Board is required to submit budgetary proposals for legislative acceptance.  To require refund payments from the Board for overpayment of tuition fees would be the kind of tampering the Eleventh Amendment sought to avoid.

*Id.* (footnote omitted).

We hold that Texas provides substantial funding to the Center and that allowing for civil recovery would interfere with the state's fiscal autonomy, even if payment is not made directly from the state treasury.  *Clark*'s second factor supports finding UTHSCH to be an arm of the state.

C.  Degree of Local Autonomy and Right to Hold and Use Property

A board of regents, appointed by the governor with the advice and consent of the senate, governs the University of Texas System, and "govern[s], operate[s], support[s], and maintain[s] each of the component institutions." Tex. Educ. Code §§ 65.11, 65.31.  All UTHSCH contracts must be in accordance with board rules or specially approved by the board of regents.  *Id.* § 65.35.  As a state agency, the Center is required to follow

12

specific accounting and financial reporting requirements.  Tex. Gov't Code § 2101.011(b).

With respect to UTHSCH's right to hold and use property, "[t]he board of regents of the University of Texas System has the sole and exclusive management and control of the lands set aside and appropriated to, or acquired by, The University of Texas System."  Tex. Educ. Code § 65.39.  "The board has the power of eminent domain to acquire for the use of the university system any land that may be necessary and proper for carrying out its purposes. . . .  The taking of the property is declared to be for the use of the state."  *Id.* § 65.33

We find that *Clark*'s third and sixth factors support finding UTHSCH to be an arm of the state.

D.  Local vs. Statewide Concerns

The University of Texas System, of which UTHSCH is a part, has locations throughout the state of Texas.  We do not accept King's contention that the Center is primarily concerned with local issues because it "does not provide statewide services or have a statewide presence" since "[a]ll of its facilities are in Houston."  Education and research are statewide concerns.  *See e.g.*, Tex. Educ. Code § 61.002 (Texas Higher Education Board created to "benefit the citizens of the state in terms of the realization of the benefits of an educated populace"); *Richardson*, 118 F.3d at 455–56 & n.15 ("That Southern is only one of many state-funded schools does not deprive it of Eleventh Amendment immunity.").

*Clark*'s fourth factor supports finding UTHSCH to be an arm of the state.

E.  Authority to Sue and Be Sued in its Own Name

Texas law provides for the University of Texas System's ability to sue on behalf of a component institution "to recover a delinquent loan, account, or debt owed."  Tex. Educ. Code § 65.42.  Texas statutory law does not appear to authorize the Center to bring suit or allow plaintiffs to sue UTHSCH directly.

Nonetheless, King identifies several cases in which UTHSCH either sued or was sued, and in none of them did it object to proceeding in its own name or insist that the University of Texas System be substituted in its stead.  *See Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364 (5th Cir. 2012); *Watson v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. H-09-0881, 2009 WL 1476469 (S.D. Tex. May 27, 2009); *Butcher v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. H-08-cv-0244, 2008 WL 4935723 (S.D. Tex. Nov. 18, 2008); *Cheatham*, 357 S.W.3d 747.  The number of cases in which the Center is a named party leads us to conclude that, for arm-of-the-state purposes, it has the authority to sue and be sued in its own name.[3]

*Clark*'s fifth factor weighs against finding UTHSCH to be an arm of the state.  But because five out of the six *Clark* factors weigh in favor of finding the Center to be one, we conclude that UTHSCH is an arm of the state and that *Stevens* applies.  UTHSCH is not a "person" under the FCA, and is not subject to *qui tam* liability.  We affirm the district court's dismissal of King's *qui tam* claim under Rule 12(b)(6) for failure to state a claim under the FCA.

---

[3] We note that these cases focusing on an entity's ability to sue or be sued are usually within the context of determining whether a state has waived immunity.  As noted above, the arm-of-the-state test was developed for sovereign immunity purposes.  A recent Fourth Circuit decision case applied a four-factor test that excludes "the authority to sue and be sued in its own name" from the analysis.  *U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012); *see also S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008).  Because our result would be the same under either our current test or the Fourth Circuit's, there is no need to change our test.

III. Retaliation Claim

King sues UTHSCH for retaliation pursuant to the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h). In relevant part, § 3730(h) provides that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

Congress amended this section in 2009. The previous version stated that "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *by his or her employer* . . . shall be entitled to all relief necessary to make the employee whole." (Emphasis added.)

In *Elizondo*, a district court applied *Stevens*'s holding that states and state agencies are not within the FCA's definition of "any person" to the older version of § 3730(h)'s use of the phrase "his or her employer" and held that states are not subject to suit under § 3730(h). *Elizondo v. Univ. of Tex. at San Antonio*, No. CIVASA-04-CA-1025-XR, 2005 WL 823353, at *4–5 (W.D. Tex. Apr. 7, 2005). But the amendment to § 3730(h) prevents us from applying *Elizondo*'s analysis here. *See Bell v. Dean*, No. 2:09-CV-1082-WKW, 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010) ("*Elizondo* and the other cases are no longer on all fours . . . given the 2009 amendment removing the word 'employer' from the statute"). Unlike the Court in *Stevens*, we are unable to resolve all of our case's issues on statutory grounds, and must

review the Center's argument that it is entitled to sovereign immunity from FCA anti-retaliation claims.

"Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). In *Foulds*, we held that the Eleventh Amendment barred a *qui tam* action seeking damages against Texas Tech University and Texas Tech University Health Sciences Center. *U.S. ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 294–95 (5th Cir. 1999); *see also Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008) (FMLA action against University of Texas at Dallas "subject to an Eleventh Amendment immunity defense").

King does not argue that § 3730 intends to strip states of their sovereign immunity, or any other reason to find that Congress abrogated sovereign immunity here. Rather, she applies her arguments against finding UTHSCH to be an arm of the state in the statutory context to the sovereign immunity inquiry as well. We apply our finding that UTHSCH is an arm of the state and hold that sovereign immunity bars King's claim for monetary relief under the FCA's anti-retaliation provision.

We affirm the district court's dismissal of King's retaliation claim under Rule 12(b)(1) for lack of subject-matter jurisdiction.

## CONCLUSION

We AFFIRM the district court's dismissal of King's suit.[4]

---

[4] King challenges the district court's dismissal of her complaint without first granting her leave to amend. Because we affirm the district court's dismissal based on our holding that UTHSCH is an arm of the state and not because of any pleading deficiency under Rule 12(b)(6) or Rule 9(b), amendment would be futile. We find no error in the district court's decision not to grant leave to amend before dismissing King's case.