# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10834

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2020

Lyle W. Cayce
Clerk

GWENDOLYN M. DANIEL,

      Plaintiff - Appellant

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, STEWART, and WILLETT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiff-Appellant Gwendolyn M. Daniel filed an Americans with Disabilities Act (ADA) action against Appellee-Defendant University of Texas Southwestern Medical Center (UTSMC). She is seeking recovery for UTSMC's alleged discrimination and retaliation against her in connection with her employment as a UTSMC nurse.

The district court granted UTSMC's Federal Rule of Civil Procedure (Rule) 12(b)(1) motion to dismiss because UTSMC is an arm of the State of Texas and therefore entitled to Eleventh Amendment immunity. We AFFIRM.

No. 19-10834

I.

UTSMC is a public medical institution within the University of Texas System (UT System)[1] and the largest medical center in the Dallas metropolitan area. UTSMC is comprised of UT Southwestern Medical School, UT Southwestern Graduate School of Biomedical Sciences, and UT Southwestern School of Health Professions. UTSMC is also affiliated with several healthcare facilities, including but not limited to Parkland Memorial Hospital, William P. Clements Jr. University Hospital, and, as relevant in this case, Saint Paul University Hospital.[2]

Plaintiff was employed at Saint Paul as a contract registered nurse and subsequently elevated to a full-time nurse. Plaintiff alleges that due to her ADA-qualified disability, UTSMC subjected her to continual harassment, discipline, discrimination, retaliation, and constructive discharge.

In July 2018, Plaintiff initiated this action against UTSMC seeking economic and equitable relief for ADA retaliation and discrimination.[3] UTSMC moved for Rule 12(b)(1) dismissal, claiming Eleventh Amendment sovereign immunity. The district court granted the motion for lack of subject matter jurisdiction because "it is well settled that UTSMC is an arm of the state of Texas." The court entered judgment in UTSMC's favor thereafter.

---

[1] The Texas Legislature has established both the University of Texas and the UT System. *See* TEX. EDUC. CODE §§ 65.01–65.461, 67.01–67.62.

[2] In 2015, UTSMC carried out the demolition of Saint Paul University Hospital. *See* Matt Goodman, *So Long, Saint Paul: UT Southwestern Demolishes Historic Hospital*, D MAGAZINE (Nov. 23. 2015), https://www.dmagazine.com/healthcare-business/2015/11/so-long-saint-paul-ut-southwestern-demolishes-historic-hospital/.

[3] Title I of the ADA prohibits discrimination by employers against qualified individuals with disabilities "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And Title V of the ADA prohibits retaliation against individuals with disabilities who oppose an unlawful practice under the ADA. *See* 42 U.S.C. § 12203(a).

2

No. 19-10834

Plaintiff subsequently moved for reconsideration which the district court denied.

Plaintiff now appeals the dismissal order granting UTSMC's 12(b)(1) motion and the entry of final judgment. Plaintiff's appeal centers entirely around whether her lawsuit is considered a suit against an arm of the State of Texas for the purpose of Eleventh Amendment protection.

## II.

We review questions of subject matter jurisdiction, including sovereign immunity determinations, de novo. *See Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

"[P]laintiff bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In evaluating a Rule 12(b)(1) motion, "we must take all of the factual allegations in the complaint as true, but we are not bound to accept as true a legal conclusion couched as a factual allegation . . . . [A] district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Machete*, 809 F.3d at 287 (internal quotation marks and citation omitted).

## III.

Pursuant to the Eleventh Amendment, a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Richardson v. S. Univ.*, 118 F.3d 450, 452–54 (5th Cir. 1997) (stating that sovereign immunity protects "arms of the state"). "While instrumentalities of the state enjoy sovereign immunity, 'the Eleventh Amendment does not extend its immunity to units of local government.'" *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 456 (5th Cir. 2018) (quoting *Bd. of Trustees of Univ. of Ala. v.*

No. 19-10834

*Garrett*, 531 U.S. 356, 369 (2001)).  Said differently, not all units of a state government are immunized from federal action.

To determine whether a unit qualifies as an arm of the state as a matter of law,[4] "we employ the six-factor test developed in *Clark v. Tarrant County, Tex.*, 798 F.2d 736 (5th Cir. 1986)." *Providence*, 902 F.3d at 456.  The six *Clark* factors are:

> (1) Whether the state statutes and case law view the agency as an arm of the state;
> (2) The source of the entity's funding;
> (3) The entity's degree of local autonomy;
> (4) Whether the entity is concerned primarily with local as opposed to statewide, problems;
> (5) Whether the entity has the authority to sue and be sued in its own name; and
> (6) Whether the entity has the right to hold and use property.

*See Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) (citing *Clark*, 798 F.2d at 744–45).  An underlying goal of this six-factor test is to protect state funding; in turn, the second factor is the most important.  *Id.* at 682.  Each factor need not be present for state immunity to be extended.  *See id*.

In employing the *Clark* factors,[5] we conclude that UTSMC is entitled to arm-of-the-state status; therefore, it has sovereign immunity from Plaintiff's ADA discrimination and retaliation claims.

*Factor 1 (Statutory and Legal Authorities)*.  UTSMC is part of the UT System.  *See* TEX. EDUC. CODE § 65.02 (a)(7).

---

[4] *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997) ("[T]he question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State . . . within the meaning of the Eleventh Amendment, is a question of federal law.").

[5] The district court order did not include the *Clark* analysis, so we discuss these factors for the first time.

4

No. 19-10834

A public university system is considered a state agency. *See* TEX. GOV'T. CODE § 572.002(10)(B). Texas Government Code § 572.002(10)(B) defines "state agency" as, among other things, "a university system or an institution of higher education as defined by Section 61.003, Education Code." Texas Education Code Section 61.003(8)'s definition of "institution of higher education" includes "any . . . medical or dental unit . . . as defined in this section." The definition of "medical or dental unit" includes UTSMC. *See* TEX. EDUC. CODE § 63.003(5).

We have held that public universities are entitled to sovereign immunity as arms of the state. *See U.S. Oil Recovery Site PRP Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501–02 (5th Cir. 2018) (collecting cases). In several unpublished opinions, we have likewise consistently treated health institutions of the UT System, including UTSMC, as instrumentalities of the State of Texas. *See, e.g., Elhaj-Chehade v. Office of Chief Admin. Hearing Officer*, 235 F.3d 1339 (Table), 2000 WL 1672679, at *1 (5th Cir. 2000) (holding that UTSMC "is an arm of the State"); *U.S. ex rel. King v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 544 F. App'x 490, 495–98 (5th Cir. 2013) (per curiam) (holding that the medical institution is an arm of state); *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007) (per curiam) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity."); *Scott v. Pfizer Inc.*, 182 F. App'x 312, 315–16 (5th Cir. 2006) (per curiam) (same with regard to University of Texas Medical Branch).

These statutes and legal authorities favor treating UTSMC as an arm of Texas.

*Factor 2 (Source of State Funding)*. In evaluating the second and most significant factor, we analyze "whether a judgment against [UTSMC] will be paid with state funds." *Richardson*, 118 F.3d at 455.

Texas law authorizes state treasury funds to be allocated to UTSMC from the permanent health fund for higher education. *See* TEX. EDUC. CODE § 63.002(c)(3). Here, Plaintiff recognizes that UTSMC receives state funding but maintains that UTSMC is not dependent on state funding. She points to an "August 2018 Legislative Appropriations Request Fiscal Years 2020 and 2021" report that states: UTSMC "receives no State dollars to construct or operate clinical facilities."[6] Because she was employed at Saint Paul, a UTSMC medical facility that predominately relied on private funding, Plaintiff urges us to infer that public funds would not be used to pay any resulting judgment from this action. We disagree.

A similar contention was posed to us in *United Carolina Bank v. Board of Regents of Stephen F. Austin State University*, 665 F.2d 553, 560 (5th Cir. Unit A 1982). There, the district court held that the university was not entitled to Eleventh Amendment protection because a judgment award did not implicate general revenues of the state, as there were identifiable revenue bonds available for a judgment payout. *Id.* (The entity "could itself pay such an award because it had substantial unappropriated, separately held, locally generated funds."). But "[t]he key is not the ability to identify segregated funds"; rather, it "is whether use of these unappropriated funds to pay a damage award against [the university] would interfere with the fiscal autonomy and political sovereignty of Texas." *Id.* at 560−61. Because the university also held funds in the state treasury and the funds were otherwise restricted from use, we reversed the district court's holding, refrained from segregating identifiable funds, and extended sovereign immunity to the

---

[6] Ironically, the exhibit containing the Legislative Appropriations Request is UTSMC's formal solicitation seeking more state funding for the forthcoming fiscal years. This same exhibit also proclaims that "state support" is "the bedrock on which UTSMC's education and research missions are built."

university. *Id.* at 561 (stating that "any award from those funds would directly interfere with the state's fiscal autonomy").

We see no reason to veer from *United Carolina Bank*'s reasoning, and in turn, we reject Plaintiff's segregation argument. Furthermore, Plaintiff's record support—which essentially relies on an isolated sentence that UTSMC clinical facilities are privately funded—does not verify whether a judgment against UTSMC would be satisfied with private or state-allocated funds. To be clear, we do not draw a bright-line rule as to the amount of private funding necessary to hold an entity financially independent from the state. Plaintiff's burden is to demonstrate (via evidentiary support) that UTSMC will be responsible for its judgment and debts, not the state. *Cf. U.S. ex rel. Barron v. Deloitte & Touche, L.L.P.,* 381 F.3d 438, 440 (5th Cir. 2004) (noting that the contractual terms dictate that the state not be responsible for any of the entity's debts and that the state be indemnified from any liability). She failed to satisfy her burden in that respect. Thus, we conclude that a subsequent judgment against UTSMC would interfere with Texas's fiscal autonomy.

Accordingly, this factor—which is the "most significant"—supports a finding that UTSMC is an arm of the State of Texas.

*Factor 3 (Local Autonomy).* As a component institution of the UT System, UTSMC is governed by a board of regents "appointed by the governor with the advice and consent of the senate." TEX. EDUC. CODE §§ 65.11, 65.31(a) ("The board is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The University System."). Plaintiff points to the UTSMC website's personnel page— which states that UTSMC is led by physicians and scientists, with no mention of the Board of Regents—to assert that Texas has minimal involvement in this entity's day-to-day operations. Assuming *arguendo* that this assertion were true, Texas still mandates that

No. 19-10834

UTSMC follows statutory accounting and financial reporting requirements because it receives state appropriated funds. *See* TEX. GOV'T. CODE § 2101.011(b) (requiring each "state agency"[7] to submit annual financial reports to the Texas Governor and other public officials); *cf.* TEX. EDUC. CODE § 63.002(c)(3).

Considering the state oversight and financial regulation, UTSMC does not operate with a level of "local autonomy" to consider it independent from Texas. This factor supports UTSMC receiving arm-of-the-state recognition.

*Factor 4 (Concerned with Local or State Issues).* Plaintiff's position is that because UTSMC's facilities are only in Dallas, UTSMC's concerns should be considered local. By Plaintiff's logic, an entity's concerns are limited to the location of its office. This line of reasoning is flawed.

In *King*, an identical "lack of statewide presence" argument was presented regarding a medical unit of the UT System, but we refrained from isolating the institution from the UT System in our *Clark* analysis. 544 F. App'x at 498. Instead, we evaluated the UT System as a whole. *Id.* (stating that the UT System's "locations throughout the state of Texas," "[e]ducation and research" were statewide concerns) (quoting TEX. EDUC. CODE § 61.002 (Texas Higher Education Board created to "benefit the citizens of the state in terms of the realization of the benefits of an educated populace")). Given the similarity in arguments in *King* and the case at bar, we dismiss the "contention that [UTSMC] is primarily concerned with local issues because it . . . [does not] have a statewide presence." *Id.* Because of UT System's statewide presence, components of the UT System shall not be confined to specific geographical areas.

---

[7] *Cf., supra*, Sect.III (stating, under Factor 1, that state agency includes university systems which cover medical units like UTSMC) (citing TEX. GOV'T. CODE § 572.002(10)(B); *cf.* TEX. EDUC. CODE §§ 63.003(5), (8)).

*Clark*'s fourth factor therefore supports UTSMC as an arm of the state.

*Factor 5 (Ability to be Sued or Sue)*. This factor bears a different result than the previous factors. Here, we evaluate whether the entity may sue and be sued in its own name. Texas law gives the UT System the authority to sue on its own behalf and/or UTSMC's behalf. *See* TEX. EDUC. CODE § 65.42 ("A suit by The University of Texas System on its own behalf or on behalf of a component institution of The University of Texas System to recover [debts] owed to The University of Texas System or a component institution of The University of Texas System must be brought in Travis County."). However, there are a number of cases (including one that reached the Supreme Court) where UTSMC was sued or made an independent decision to sue on its own behalf. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Walker v. Univ. of Tex. Sw. Med. Ctr.*, 638 F. App'x 394 (5th Cir. 2016) (per curiam); *Shah*, 54 F. Supp. 3d at 681. Thus, this factor weighs against finding UTSMC to be an arm of the state.

*Factor 6 (Use of Property)*. Lastly, Plaintiff claims that UTSMC operates its two hospitals without state control over its property management. *Id.* at 20. We disagree.

"The board of regents of the University of Texas System has the sole and exclusive management and control of the lands set aside and appropriated to, or acquired by, The University of Texas System." TEX. EDUC. CODE § 65.39. The components making up the UT System are subject to state eminent domain to acquire or condemn land "that may be necessary and proper for carrying out" the use of the state. *Id.* at § 65.33 ("The board has the power of eminent domain to acquire for the use of the university system any land that may be necessary and proper for carrying out its purposes. . . . The taking of the property is declared to be for the use of the state."). Put straightforwardly,

No. 19-10834

the UT System has the power of eminent domain, and the land it acquires becomes property of the state.

These characteristics evince UTSMC does not exclusively manage the use of its property. Consequently, this *Clark* factor supports a finding of UTSMC as an arm of the state.

## IV.

In sum, five out of the six *Clark* factors, including the most important source-of-funding factor, counsel in favor of a finding that UTSMC is an instrumentality of the State of Texas. Accordingly, we hold that UTSMC is entitled to Eleventh Amendment protection,[8] precluding our jurisdiction.

For the foregoing reasons, we AFFIRM the district court's dismissal of this action for lack of subject matter jurisdiction.

---

[8] Of note, Plaintiff has not set forth any argument that an exception to sovereign immunity applies here. *Cf. Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1333 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense" or Congress has clearly abrogated immunity via legislation). Thus, all arguments pertaining to the Eleventh Amendment exceptions are forfeited. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").